# United States Court of Appeals

## For the Eighth Circuit

_____

No. 19-3154

_____

Turtle Island Foods, SPC, doing business as The Tofurky Company; The Good
Food Institute, Inc.

*Plaintiffs - Appellants*

v.

Locke Thompson, in his official capacity as Cole County Prosecuting Attorney
and on behalf of a *defendant* class of all Missouri Prosecuting Attorneys

*Defendant - Appellee*

State of Missouri

*Intervenor - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: November 19, 2020
Filed: March 29, 2021

_____

Before COLLOTON, MELLOY, and KELLY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Plaintiffs, Turtle Island Foods d/b/a The Tofurky Company (Tofurky) and the Good Food Institute (the Institute), brought a civil rights action under 42 U.S.C. § 1983 to challenge the constitutionality of Missouri Revised Statutes § 265.494(7) (the Statute), which criminalizes "misrepresenting a product as meat that is not derived from harvested production livestock or poultry." Plaintiffs moved for a preliminary injunction, which the district court[1] denied. We affirm.

## I. Background

The Statute went into effect in 2018, adding a new prohibited practice to Missouri's preexisting meat advertising regulations. It prohibits "person[s] advertising, offering for sale or selling all or part of a carcass or food plan[2]" from "engag[ing] in any misleading or deceptive practices," Mo. Rev. Stat. § 265.494, which now includes: "misrepresenting a product as meat that is not derived from harvested production livestock or poultry," id. § 265.494(7). The Statute defines "meat" as: "any edible portion of livestock, poultry, or captive cervid carcass or part thereof." Id. § 265.300(7). The term "misrepresent" is defined as "the use of any untrue, misleading or deceptive oral or written statement, advertisement, label, display, picture, illustration or sample." Id. § 265.490(6). Pursuant to the Statute, any person who violates its terms is guilty of a class A misdemeanor. Id. § 265.496.

---

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

[2]"'Food plan' means any plan offering meat for sale or the offering of such product in combination with each other or with any other food or nonfood product or service for a single price." Mo. Rev. Stat. § 265.490(3). The meaning of this statutory definition is far from clear. Equally unclear is how this definition should impact our standing or substantive analysis. Although invited to explain the meaning of this prefatory language during oral argument, the parties were unable. On further review, the district court may be able to receive and provide further clarification.

The punishment for a class A misdemeanor is imprisonment for up to one year and a fine up to $1,000. Id. § 558.011.1(6).

The day before the Statute took effect, Plaintiffs filed suit against the Cole County Prosecuting Attorney[3] and a putative defendant class of Missouri's prosecuting attorneys. The Cole County Prosecuting Attorney declined to defend the Statute's constitutionality; therefore, the State of Missouri (the State) intervened for that limited purpose, while reserving its sovereign immunity. The Complaint alleges the Missouri legislature passed the Statute in order to protect Missouri's animal agricultural industry against competition from the plant-based-meat and clean-meat-substitutes industries.[4] It also alleges the Statute violates Plaintiffs' First Amendment rights and due process rights and violates the Dormant Commerce Clause. Plaintiffs seek: a preliminary and permanent injunction to prevent enforcement of the Statute; a declaration that the Statute is unconstitutional on its face and as applied to Plaintiffs; and an award of costs and fees.

Two days after the Statute took effect, the Missouri Department of Agriculture issued somewhat unclear guidance on the new Statute. The Department explained that, in its view, the law did not prohibit, and the Department would not refer for prosecution, products in packaging fulfilling two conditions: (1) prominent

---

[3]Locke Thompson, Cole County Prosecuting Attorney, is substituted as appellee pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure.

[4]According to Plaintiffs: "Plant-based meats are foods that approximate the texture, flavor, and appearance of conventional meats from slaughtered animals. They are served and consumed just like any other meats. Plant-based meats are typically made from soy, tempeh, wheat, jackfruit, textured vegetable protein, or other vegan ingredients." Compl. ¶ 14. Relatedly: "Clean meats are made of muscle tissue cultured *in vitro* from animal cells." Id. ¶ 15. "Clean meats" are lab-created products; they are not yet available in the marketplace.

statements on the front of the package implying the product is "plant-based," "veggie," "lab-grown," "lab-created," or employing a similar qualifier; and (2) a prominent statement anywhere on the package that the product is "made from plants," "grown in a lab," or a comparable disclosure. In the Department's currently-expressed view, products containing these or similar disclosures "do not misrepresent themselves as meat" and therefore do not violate section 265.494(7).

Tofurky is a vegan food brand whose products are marketed and sold in Missouri. The Institute is a food advocacy organization that partners with vegan food producers whose products are marketed and sold in Missouri. Plaintiffs believe their current marketing and labeling practices are only able to be accurate and effective because they describe products through "comparison to the conventional meat products they are designed to replace." For example, Tofurky labels its plant-based products using references to traditional meat products, such as "slow-roasted chick'n," "DIY chorizo style sausage," "original sausage kielbasa," and "vegetarian ham roast." The Institute works with companies that also market their products using meat-related terminology, such as "vegan jerky," "smart bacon: veggie bacon strips," and "the ultimate beefless burger."

Although Plaintiffs use meat-related terminology, Tofurky, as well as the plant-based meat companies that the Institute supports, use labels and marketing that clearly indicate their products are made of plants, meatless, vegetarian, or vegan. The Complaint includes seven labels for certain Tofurky products, all of which include modifiers like "vegetarian," "veggie," and "all vegan" or otherwise indicate they are made with "pasture raised plants" or "plant-based" ingredients, not meat harvested from poultry or livestock.

After filing the Complaint, Plaintiffs filed a motion for a preliminary injunction and a motion to certify the defendant class. Plaintiffs argued a preliminary injunction of the Statute, as applied to them, was warranted based on the likelihood of success

of their First Amendment claim. Plaintiffs argued that, under the Statute, their use of meat-related terminology in their marketing and labeling could be viewed as "misrepresenting" their products as meat because the statute defines "misrepresent" as not only "the use of any untrue" statements but also statements that are "misleading or deceptive." In response, the State argued the labels, like those Tofurky submitted to the district court, which describe plant-based meat as plant-based, are not misleading and are therefore not prohibited by the Statute. Without holding a hearing, the district court certified the class and denied the motion for a preliminary injunction. The court concluded Plaintiffs had not shown a substantial likelihood of success on the merits of their First Amendment claim because the Statute does not prohibit their commercial speech. Although Plaintiffs' request for a preliminary injunction was denied, the district court's analytical path rendered its decision a seemingly positive outcome for Plaintiffs—that is, the district court found preliminarily that the Statute did not apply to Plaintiffs' speech. Plaintiffs appealed nonetheless and now argue the district court erred in its interpretation of the Statute. Plaintiffs contend the Statute is a content-based restriction on their commercial speech and ask that this court remand with instructions to enter a preliminary injunction.

## II. Legal Standard

We generally review the denial of a preliminary injunction for abuse of discretion and reverse "where the district court rests its conclusion on clearly erroneous factual finding or erroneous legal conclusions." Minn. Citizens Concerned for Life, Inc. v. Swanson, 692 F.3d 864, 870 (8th Cir. 2012) (en banc). We review the district court's legal conclusions de novo. Johnson v. Minneapolis Park & Recreation Bd., 729 F.3d 1094, 1098 (8th Cir. 2013).

"A district court considering injunctive relief evaluates the movant's likelihood of success on the merits, the threat of irreparable harm to the movant, the balance of the equities between the parties, and whether an injunction is in the public interest." Powell v. Ryan, 855 F.3d 899, 902 (8th Cir. 2017) (citing Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). "A preliminary injunction is an extraordinary remedy, and the burden of establishing the propriety of an injunction is on the movant." Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003) (internal citation omitted). "No single factor is dispositive, as the district court must balance all factors to determine whether the injunction should issue." Lankford v. Sherman, 451 F.3d 496, 503 (8th Cir. 2006). However, "[i]n deciding whether to grant a preliminary injunction, likelihood of success on the merits is most significant." Laclede Gas Co. v. St. Charles Cnty., 713 F.3d 413, 419–20 (8th Cir. 2013) (citation omitted). Because Plaintiffs challenge a state statute "based on presumptively reasoned democratic processes," they must show they are "likely to prevail on the merits." Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 732–33 & n. 4 (8th Cir. 2008) (en banc).

## III. Discussion
### A. Jurisdictional Analysis

As an initial matter, we briefly address the State's argument that Plaintiffs lack standing and have brought this action before it is ripe for review. The district court did not directly address these questions below. However, we "must address questions of standing before addressing the merits of a case where standing is called into question." Brown v. Medtronic, Inc., 628 F.3d 451, 455 (8th Cir. 2010). "Th[e] irreducible constitutional minimum of standing requires a showing of injury in fact to the plaintiff that is fairly traceable to the challenged action of the defendant, and likely to be redressed by a favorable decision." Braden v. Wal–Mart Stores, Inc., 588 F.3d 585, 591 (8th Cir. 2009) (cleaned up). The State argues Plaintiffs lack standing because they cannot show injury in fact, just like they cannot show they are likely to

-6-

prevail on the merits for purposes of obtaining a preliminary injunction. "It is crucial, however, not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive." Id.

Plaintiffs bring a pre-enforcement First Amendment challenge alleging their fear of prosecution under the Statute has caused and will continue to cause Plaintiffs to self-censor their labels and marketing materials. In a pre-enforcement suit such as this, "a plaintiff satisfies the injury-in-fact requirement," and thus has standing, "where [it] alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" Susan B. Anthony List v. Driehaus, 573 U.S. 149, 159–60 (2014) (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)). This is a forgiving standard, satisfied so long as the plaintiff's "intended future conduct is arguably . . . proscribed by the statute it wishes to challenge." Id. at 162 (cleaned up). Although it is not yet clear whether all of Plaintiffs' intended commercial speech will be proscribed by the Statute, it is at least "arguable" at this stage of the litigation. Id. Because the standing analysis and the substantive analysis are not coextensive, and the substantive question in this case turns on the somewhat fuzzy question of whether Plaintiffs' speech renders them criminally liable for "misrepresenting" their products as meat, we find the First Amendment's lenient standing requirement especially appropriate here. Of course, the district court can address these questions again at a later stage. See Const. Party of S.D. v. Nelson, 639 F.3d 417, 420 (8th Cir. 2011) ("A party invoking federal jurisdiction must support each of the standing requirements with the same kind and degree of evidence at the successive stages of litigation as any other matter on which a plaintiff bears the burden of proof.").

Further, because Plaintiffs' claim "is largely a legal question" and involves the chill of "allegedly protected First Amendment expression," it is ripe for adjudication. See 281 Care Comm. v. Arneson, 638 F.3d 621, 631 (8th Cir. 2011) (explaining

-7-

ripeness standard). Therefore, at this preliminary stage, we find that Plaintiffs' allegations of harm are sufficient to establish a controversy ripe for adjudication.

## B. Preliminary Injunction Analysis

Plaintiffs' primary arguments on appeal challenge the district court's legal conclusion that Plaintiffs were unable to show they are "likely to prevail on the merits" of their as-applied[5] First Amendment claim because the Statute does not prohibit their speech. Plaintiffs argue the district court applied the wrong legal standard and conducted its analysis too narrowly. We address each argument in turn.

First, Plaintiffs argue the district court applied the wrong legal standard in concluding the Statute does not proscribe Plaintiffs' speech. Specifically, Plaintiffs argue the district court failed to apply Susan B. Anthony List v. Driehaus. Plaintiffs contend that, under Susan B. Anthony List, they needed to show their speech was merely "arguably proscribed" by the Statute, not certainly proscribed by the Statute. See Susan B. Anthony List, 573 U.S. at 162. However, Susan B. Anthony List sets forth the standard for "determining when the threatened enforcement of a law creates an Article III injury" *for purposes of standing*. Id. at 158. Therefore, Plaintiffs' argument conflates the legal standard properly applied during standing analysis with that properly applied to the merits of a First Amendment claim.

The standard reaffirmed in Susan B. Anthony List does no work for Plaintiffs beyond the standing context. Although related, our analysis of whether Plaintiffs

---

[5]"An as-applied challenge consists of a challenge to the statute's application only as-applied to the party before the court." Republican Party of Minn., Third Cong. Dist. v. Klobuchar, 381 F.3d 785, 790 (8th Cir. 2004). "If an as-applied challenge is successful, the statute may not be applied to the challenger, but is otherwise enforceable." Id.

have standing on their First Amendment claim at this stage in the litigation is separate from our analysis of whether the claim is likely to prevail on the merits. See Braden, 588 F.3d at 591 ("In most cases, . . . a plaintiff's standing tracks his cause of action. That is, the question whether he has a cognizable injury sufficient to confer standing is closely bound up with the question of whether and how the law will grant him relief. It is crucial, however, not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive." (citations omitted)). While Plaintiffs may be able to enter the proverbial doors of the courthouse, that does not ensure their success once inside. This is especially true where, as here, we are addressing a challenge to a validly enacted state statute and Plaintiffs must meet the "more rigorous standard" of showing they are "likely to prevail on the merits" of their claim. Planned Parenthood, 530 F.3d at 732.

Here, the district court was correct to not apply Susan B. Anthony List outside the standing context. Instead, the court properly determined Plaintiffs' claim was governed by Central Hudson Gas & Electric Corp. v. Public Service Commission of New York, 447 U.S. 557 (1980), which provides the test for analyzing the constitutionality of laws burdening commercial speech. Id. at 566. On the limited record before it, the district court found Plaintiffs were not likely to prevail on the merits of their claim because their intended speech, as described to the court, was not likely to be seen as "misrepresenting a product as meat" and therefore did not fall within the scope of the Statute. The district court did not apply the wrong legal standard.

Next, and relatedly, Plaintiffs argue the district court interpreted the scope of the Statute too narrowly and failed to consider the full scope of their intended commercial speech when determining their speech was not prohibited by the Statute. The Statute prohibits "misrepresenting a product as meat that is not derived from harvested production livestock or poultry." Mo. Rev. Stat. § 265.494(7); see also id. § 265.490(6) (defining "misrepresent" as "the use of any untrue, misleading or

deceptive oral or written statement, advertisement, label, display, picture, illustration or sample."). Here, the State does not argue Plaintiffs "misrepresent" their products as meat. And, Plaintiffs allege they are not in the business of misrepresenting their products as meat. In fact, Tofurky alleges its products are labeled in such a way as to "clearly indicate that the products do not contain meat from slaughtered animals" and are otherwise "clearly labeled as plant based, vegan, or vegetarian." For the sake of Plaintiffs' arguments on appeal, these allegations prove too much. And further, Plaintiffs' as-applied challenge is impeded by the fact that there is a significant doubt surrounding whether the Statute would ever, or could ever, be applied to their speech. The burden is on Plaintiffs to demonstrate they are likely to succeed on the merits of their as-applied First Amendment claim, which includes explaining how the Statute applies to their current and intended commercial speech. Plaintiffs submitted only seven labels in support of their motion, none of which—in the eyes of Plaintiffs, the State, or the district court—misrepresent their products as meat. On this limited record, and given the parties' arguments, the district court acted within its discretion in reading the Statute as not prohibiting Plaintiffs' commercial speech.[6]

Because we find no reason to disturb the district court's ruling as to Plaintiffs' likelihood of success on the merits, we similarly conclude the district court did not abuse its discretion in determining Plaintiffs failed to show irreparable harm. There is no reason for us to address the remaining Dataphase factors. See Powell v. Noble, 798 F.3d 690, 702–03 (8th Cir. 2015).

---

[6]Plaintiffs argue there should be no discernable difference between this case and a suit brought by Tofurky to enjoin a relatively similar law in neighboring Arkansas. Turtle Island Foods v. Soman, 424 F. Supp. 3d 552, 573 (E.D. Ark. 2019). There, the district court granted the plaintiff's motion for a preliminary injunction. We find the cases distinguishable based both on the scope of the statutory language at issue and the arguments raised by the parties therein.

At this stage in the case, the evidentiary record is scant and the scope of our review is limited. Roberts v. Van Buren Pub. Sch., 731 F.2d 523, 526 (8th Cir. 1984) ("Our review of a district court's denial of a preliminary injunction is limited."). The fully developed factual record may eventually include more of Plaintiffs' marketing materials and labels and may be materially different from that initially before the district court. Therefore, we emphasize that our analysis here may provide little guidance as to the appropriate disposition on the merits. Id.

On this record, we affirm the ruling of the district court.

COLLOTON, Circuit Judge, dissenting.

I agree that the district court did not err in refusing to enjoin the Missouri statute at the request of the plaintiffs. As the district court explained, the statute "does not prohibit their speech." But rather than permit further litigation over a statute that does not apply to the speech at issue, I would remand with directions to dismiss the action for lack of Article III standing.

The plaintiffs assert an injury in fact based on threatened enforcement of the state statute. A complaint is sufficient to confer standing where it alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). The plaintiffs do not satisfy this standard.

First, the challenged Missouri statute applies only to a "person advertising, offering for sale or selling all or part of a carcass or food plan." Mo. Rev. Stat. § 265.494. Neither plaintiff is such a person, so the statute does not apply.

The plaintiffs do not advertise, offer for sale, or sell any part of a "carcass or food plan," because they do not market or sell a carcass or "meat." A "food plan" means "any plan offering meat for sale or the offering of such product in combination with each other or with any other food or nonfood product or service for a single price." *Id*. § 265.490(3). "Meat" means "any edible portion of livestock, poultry, or captive cervid carcass or part thereof." *Id.* §§ 265.490(5), 265.300(7). The complaint alleges that the plaintiffs sell only "plant-based food products," so they do not advertise, offer for sale, or sell a food plan. The majority says the meaning of "food plan" is "far from clear" because "the parties were unable" to explain it. *Ante*, at 2 n.2. It is true that the plaintiffs could not explain why the plain language of the statute applies to them, but their inability to do so fortifies the conclusion that they lack standing.

Second, even if the statute applied to a seller of plant-based food products, everyone agrees that Tofurky's labels do not misrepresent products as meat. The complaint alleges that the product labels "clearly indicate the products are plant based, meatless, vegetarian, or vegan." Complaint, R. Doc. 1, at 7. The evidentiary record confirms that the products are "clearly labeled as plant based, vegan, or vegetarian." *Id*. at 11. The State, for its part, emphasizes that the statute does not prohibit accurate labels about plant-based meat alternatives, and agrees that Tofurky's labels accurately describe the products. It is not "arguable" that the labels presented by the plaintiffs are untrue, misleading, or deceptive. *See* Mo. Rev. Stat. § 265.490(6). There is thus no credible threat of enforcement against the plaintiffs. The potential that a rogue county prosecutor might bring an unfounded prosecution is insufficient to confer standing. *Zanders v. Swanson*, 573 F.3d 591, 594 (8th Cir. 2009); *see Glenn v. Holder*, 690 F.3d 417, 422 (6th Cir. 2012) (holding that "fear" of "wrongful prosecution" was "inadequate to generate a case or controversy").

The plaintiffs bear the burden to establish standing. Speculation that the plaintiffs might not have presented their best evidence does not allow them to defer

a showing of standing to a later stage of the proceedings. Therefore, I would vacate the district court's order and remand the case with directions to dismiss the complaint.

_____