# United States Court of Appeals
## For the Eighth Circuit
_____

No. 20-1538
_____

Animal Legal Defense Fund; Animal Equality; Center for Biological Diversity;
Food Chain Workers Alliance,

*Plaintiffs - Appellants*,

v.

Jonathan Vaught, doing business as Prayer Creek Farm; DeAnn Vaught, doing
business as Prayer Creek Farm; Peco Foods, Inc.,

*Defendants - Appellees.*

------------------------------

Reporters Committee for Freedom of the Press; Deans and Law Professors; 23
Media Organizations,

*Amici on Behalf of Appellants.*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central
_____

Submitted: February 25, 2021
Filed: August 9, 2021
_____

Before COLLOTON, WOLLMAN, and SHEPHERD, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Animal Legal Defense Fund, Animal Equality, Center for Biological Diversity, and Food Chain Workers Alliance brought an action against Peco Foods, Inc., and Jonathan and DeAnn Vaught. The complaint sought an order that would prevent Peco Foods and the Vaughts from bringing a civil suit against the plaintiffs under an Arkansas statute, Ark. Code Ann. § 16-118-113. The district court dismissed the action, reasoning that the complaint failed to allege sufficient facts to establish Article III standing. We reach a different conclusion, and reverse and remand for further proceedings.

The statute at issue provides a "[c]ivil cause of action for unauthorized access to property." Ark. Code Ann. § 16-118-113. The law prohibits a person "who knowingly gains access to a nonpublic area of a commercial property" from engaging in "an act that exceeds the person's authority." *Id.* § 16-118-113(b). The plaintiffs, who describe themselves as "nonprofit organizations dedicated to reforming industrial animal agriculture," claim that the statute violates their rights to free speech under the First Amendment. According to the complaint, defendant DeAnn Vaught was a sponsor of the legislation while serving in the Arkansas legislature.

The two lead organizations, Animal Legal Defense Fund and Animal Equality, allege that they have "specific and definite plans" to investigate Peco Foods's chicken slaughterhouses and the Vaughts' pig farm. The organizations allege that they would send undercover investigators to seek employment with the slaughterhouse and the farm, or with third parties who have access to the target facilities. Once employed, the investigators would collect information on the operation of the facilities by personal observation or through the use of unattended recording devices. But the lead organizations have refrained from investigating due to the threat that Peco Foods and the Vaughts, as commercial property owners, will bring a lawsuit against them under

the statute. Center for Biological Diversity and Food Chain Workers Alliance engage in advocacy and assert that they have made arrangements with the lead organizations

to receive useful information that would result from their investigations. The plaintiffs argue that they have been "chilled" from engaging in activity that is protected under the First Amendment.

The district court concluded that the plaintiffs failed adequately to allege Article III standing to sue. The court decided that any injury was too speculative, because neither Peco Foods nor the Vaughts had hired an investigator affiliated with the plaintiffs, so no such investigator had developed information that the organizations would seek to publish. The court further reasoned that the complaint failed to allege that Peco Foods and the Vaughts engage "in the type of practices [the plaintiffs] would like to expose." The plaintiffs appeal, and we review the district court's decision *de novo*.

To establish Article III standing, plaintiffs must show (1) an injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) that a favorable decision will likely redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). The plaintiffs bear "the burden of establishing these elements," and must support each element "in the same way as any other matter" on which they bear the burden of proof. *Id.* at 561. On a motion to dismiss, therefore, the plaintiffs must allege sufficient facts to support a reasonable inference that they can satisfy the elements of standing. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Stalley v. Cath. Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007). A plaintiff satisfies the injury-in-fact element if it alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298

(1979)). "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" *Id*. at 158 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410, 414 n.5 (2013)).

We conclude that the complaint adequately alleges the elements of Article III standing. First, the plaintiffs allege that, but for the statute, the lead organizations would send an investigator to gather information and take video and audio recordings in the facilities owned by Peco Foods and the Vaughts. They assert that all plaintiffs would use the results of the investigations in their advocacy. This conduct is arguably affected with a constitutional interest, because "the creation and dissemination of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011).

Second, the complaint alleges an intention to engage in a course of conduct arguably proscribed by the Arkansas statute. *See Susan B. Anthony List*, 573 U.S. at 162-63; *PETA, Inc. v. Stein*, 737 F. App'x 122, 130 (4th Cir. 2018) (per curiam). The statute prohibits "an act that exceeds" a person's authority in nonpublic areas of commercial property, and it lists activities in which an employee may not engage. Ark. Code Ann. § 16-118-113(b), (c).

The lead organizations allege that they have retained an experienced investigator to conduct an employment-based investigation into Peco Foods's facilities and the Vaughts' farm. The complaint asserts that the investigator will "apply for and obtain a job through the usual channels," and "gather information and record audio files and video footage in the facilities' nonpublic areas" for use in advocacy. In the terms of the statute, the complaint describes an intention to engage in an act that "[c]aptures or removes the employer's data, paper, [or] records," or "[r]ecords images or sound" in order to use that information "in a manner that damages the employer." *Id.* § 16-118-113(c)(1)-(2). The organizations also allege

-4-

that by so doing, they would commit "an act that substantially interferes with the ownership or possession" of the property. *Id.* § 16-118-113(c)(5). The complaint further provides that the investigators will place "an unattended camera . . . to record images or data" without authorization and in violation of the statute. *Id.* § 16-118-113(c)(3).

The lead organizations agreed to "share the information they obtain[] from [the] investigations" into the Vaughts' farm and Peco Foods's facilities, so that the Center for Biological Diversity and Food Chain Workers Alliance may advocate against the activities at the facilities. The advocacy organizations thus allege an intent to engage in a course of conduct that arguably "assists" an employee to use a "recording in a manner that damages the employer." *Id.* § 16-118-113(c)(2), (d).

Third, the complaint sufficiently alleges a credible threat of enforcement. A plaintiff's fear of enforcement must be objectively reasonable, meaning that the threat of enforcement may not be "imaginary or wholly speculative." *Susan B. Anthony List*, 573 U.S. at 160 (quoting *Babbitt*, 442 U.S. at 302); *see also 281 Care Comm. v. Arneson*, 638 F.3d 621, 629-30 (8th Cir. 2011). Peco Foods and the Vaughts first contend that it is speculative that an investigator will be hired by either of them, and the Vaughts suggest that a family farm "does not frequently hire employees." But Animal Legal Defense Fund states that it has successfully investigated "facilities like those" owned by Peco Foods and the Vaughts. Animal Equality alleges that it has filmed inside hundreds of facilities, and that it was "the first organization" to do so at several facilities. These allegations of previous success lend "concreteness and specificity to the plaintiffs' claims." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006) (en banc). The complaint also explains that investigators need not be placed directly with Peco Foods or the Vaughts, but could be employed by another business that has access to the target facilities.

Like the plaintiffs in *PETA, Inc. v. Stein*, the organizations here alleged they have "in the past conducted actual undercover investigations . . . for the purpose of uncovering unethical or illegal treatment of animals and disseminating such information to the public." 737 F. App'x at 130. And they allege that "they wish to continue such investigations in furtherance of their missions and that they are fully prepared to go forward but for their fear of liability." *Id*. Under those circumstances, we agree with the Fourth Circuit that the complaint has alleged sufficient facts to establish a plausible claim of injury in fact and jurisdiction.

The Vaughts and Peco Foods argue that there is no credible threat that they would enforce the statute, because the organizations would not find it worthwhile to infiltrate their facilities in the first place. This is so, say the property owners, because they do not engage in the type of practices that the lead organizations would like to document. The complaint alleges, however, that it is "likely," given the dimensions of the Vaughts' farm, that pigs will be contained in "nearly immovable quarters." The plaintiffs further assert that "regardless of what particular practices" the farm employs, the organizations "have an interest in uncovering the activities and conditions" on the farm, because DeAnn Vaught sponsored the legislation and allegedly wished to conceal the activities and conditions. The complaint also alleges that the federal government authorized one of Peco Foods's facilities to use a high-speed slaughter line, and all of Peco Foods's facilities use a "live hang" method for slaughter. The complaint states that the investigator will document the conditions in the facilities because there is an "important public interest in understanding how Peco operates." These allegations, taken as true, show an intent to record the conditions of the facilities and to use those recordings.

Peco Foods and the Vaughts next argue that for the plaintiffs to have an injury in fact, they must be poised to publish information gathered from the facilities. This argument understates the scope of the statute. The law prohibits the placement of an

"unattended camera . . . to record images or data for an unlawful purpose," with no requirement that the "images or data" be published. Ark. Code Ann. § 16-118-113(c)(3). The statute provides for liquidated damages up to $5,000 per day of violation. *Id.* § 16-118-113(e)(4). The complaint, moreover, plausibly alleges that the plaintiffs would collect and disseminate information from the facilities in violation of the statute. A plaintiff need not expose itself to liability in order to show an injury in fact, and the statute's deterrent effect on the investigations is sufficient to establish an injury. *See Susan B. Anthony List*, 573 U.S. at 158-59.

Peco Foods and the Vaughts argue finally that there is no credible threat of enforcement because they are private parties and have not threatened to bring suit. A formal threat, however, is not required to establish an injury in fact. The question is whether the plaintiffs have an objectively reasonable fear of legal action that chills their speech. *Balogh v. Lombardi*, 816 F.3d 536, 542 (8th Cir. 2016).

Citing *Eckles v. City of Corydon*, 341 F.3d 762 (8th Cir. 2003), the Vaughts argue that a specific threat of enforcement is necessary before there is an objectively reasonable fear of enforcement. *Eckles* does not support that proposition. The plaintiff in *Eckles* was embroiled in a dispute with a city and county over signage on his property that violated a city ordinance. The lawsuit asserted an injury in fact based on a letter from a law firm saying that it would "recommend" that county officials pursue a libel action against the plaintiff if he did not remove certain signs. This court noted that the law firm's letter did not contain a threat of prosecution (no *county* ordinance was involved), but the decision did not hold that such a threat was essential to establish injury. Rather, the court determined that the alleged injury from the county in that case was "merely conjectural or hypothetical," because it was premised on a conditional recommendation from a law firm to pursue a private civil action. *Id.* at 768-69.

In this case, the lead organizations sent letters to Peco Foods and the Vaughts requesting that they waive their rights under the statute; neither defendant responded. The purpose of the Arkansas statute is to provide parties like Peco Foods and the Vaughts a right of action against organizations like the plaintiffs if they gain unauthorized access to commercial property. The property owners have declined to disavow an intent to pursue their rights under the law if they are subjected to violations. It is plausible to believe that the defendants "will likely react in predictable ways" by resorting to their legal remedies. *See Dep't of Com. v. New York*, 139 S. Ct. 2551, 2565-66 (2019). Under those circumstances, we conclude that the organizations' alleged fear of enforcement is objectively reasonable. *Cf. Phelps-Roper v. City of Manchester*, 697 F.3d 678, 687 (8th Cir. 2012) (en banc). Finally, the injury is fairly traceable to potential legal action by Peco Foods and the Vaughts, and a favorable decision will likely redress the injury. *See Rodgers v. Bryant*, 942 F.3d 451, 455 (8th Cir. 2019). Accordingly, the complaint is sufficient to establish a case or controversy.*

Separate from Article III standing, Peco Foods argues that the district court lacked jurisdiction because the plaintiffs have no cause of action to enjoin private parties from commencing a lawsuit. Whether a plaintiff has a cause of action,

---

*The dissent concludes in a footnote that the plaintiffs' claims are not ripe for review because they rest upon contingent future events. The ripeness doctrine draws "both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993). Where a plaintiff alleges a chill on speech, "Article III standing and ripeness issues . . . 'boil down to the same question.'" *Susan B. Anthony List*, 573 U.S. at 157 n.5 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8 (2007)). For the same reasons that the plaintiffs have adequately alleged Article III standing, the case is ripe for purposes of Article III. To the extent the dissent suggests that prudential concerns make the claims nonjusticiable, we disagree. The constitutional challenges to the Arkansas statute present legal issues that are fit for review, and delaying judicial review would result in hardship to the plaintiffs. *Id.* at 167-68.

however, goes to the merits of a claim and does not implicate the court's "statutory or constitutional *power* to adjudicate the case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998); *see Davis v. Passman*, 442 U.S. 228, 239 n.18 (1979). Having concluded that the plaintiffs have established Article III standing, we will remand the case for the district court to consider the merits in the first instance.

For these reasons, the judgment of the district court is reversed, and the case is remanded for further proceedings.

SHEPHERD, Circuit Judge, dissenting.

I disagree that Appellants have alleged an injury in fact sufficient to confer Article III standing because they are not yet, and may never be, in a position to engage in the course of conduct actually proscribed by Ark. Code Ann. § 16-118-113. "To establish injury in fact for a First Amendment challenge to a state statute, . . . the plaintiff needs only to establish that he would like to engage in arguably protected speech, but that he is chilled from doing so by the existence of the statute." 281 Care Comm. v. Arneson, 638 F.3d 621, 627 (8th Cir. 2011) (citation omitted). Such "[s]elf-censorship can itself constitute injury in fact," but the plaintiff's self-censorship must be based upon more than "mere allegations of a 'subjective' chill resulting from a statute." Id. (citation omitted). Instead, "[t]he relevant inquiry is whether a party's decision to chill his speech in light of the challenged statute was 'objectively reasonable,'" which requires the plaintiff to show "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute, and [that] there exists a credible threat of prosecution." Id. (second alteration in original) (citations omitted). However, the plaintiff suffers no injury when his fears of prosecution are the product of mere imagination or speculation. See id.

Here, I find that Appellants' fears of prosecution are currently nothing more

than the product of their own imagination and thus are insufficient to constitute an injury in fact. As the district court noted, for Appellants to open themselves up to civil liability under Ark. Code Ann. § 16-118-113, the following would need to occur:

> An investigator hired by ALDF and AE (who they have already chosen) gets a job at one of [Appellees'] facilities, the investigator performs the investigation (such as ALDF and AE have successfully done numerous times in the past), ALDF and AE receive information from the investigations that they and CBD and FCWA promulgate in the public interest (information such as has led to prosecutions, food safety recalls, citation and closures in the past), and [Appellees] file civil actions pursuant to [the statute] as a result.

R. Doc. 51, at 5. This chain of events, which may or may not occur, is "too speculative for Article III purposes" which requires the injury to be "*certainly* impending." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013) (citation omitted); see also 281 Care Comm., 638 F.3d at 627 ("[P]ersons having no fears of . . . prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." (citation omitted)).

True, a plaintiff need only allege an intention to engage in the course of conduct rather than actually engaging in such conduct. See Iowa Right to Life Comm., Inc. v. Tooker, 717 F.3d 576, 604 (8th Cir. 2013). But without the actual *ability* to engage in that course of conduct, there can be no credible threat of prosecution. See Zanders v. Swanson, 573 F.3d 591, 594 (8th Cir. 2009) ("The gravamen of Plaintiffs' claims on appeal is whether Plaintiffs satisfy the injury-in-fact requirement for constitutional standing[—]that is, have they asserted facts that affirmatively and plausibly suggest that they are indeed subject to a credible threat of prosecution under the statute for engaging in the conduct for which they invoke constitutional protection."). Generally, our cases where we have found that an injury in fact exists involve a plaintiff who is already in the position to carry out the proscribed conduct and refuses to do so only

out of fear of being prosecuted under the statute. See generally, e.g., Jones v. Jegley, 947 F.3d 1100 (8th Cir. 2020) (donating to a candidate during "blackout" dates); Balogh v. Lombardi, 816 F.3d 536 (8th Cir. 2016) (publishing the identities of individuals who participate in executions); 281 Care Comm., 638 F.3d 621 (publishing false statements about proposed ballot initiatives); St. Paul Area Chamber of Com. v. Gaertner, 439 F.3d 481 (8th Cir. 2006) (using general treasury funds to support candidates for office). Instead, Appellants' claim here is contingent upon events out of their control: whether Appellees (or another organization with access to Appellees' facilities) will hire Appellants' investigator and whether Appellees are engaged in the type of practices that Appellants suspect. See Clapper, 568 U.S. at 413 ("In the past, we have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment.").[1]

Appellants argue that executing their plans would expose them to liability, but the course of conduct proscribed by the statute does not begin until an employee (or another individual with access to Appellees' facilities) exceeds his or her authority to enter a nonpublic area of Appellees' facilities. See Ark. Code Ann. § 16-118-113(b). Appellants cannot be chilled from engaging in speech that is not proscribed by the

---

[1]Alternatively, I would find that Appellants have brought their claim prematurely, i.e., their claim is not ripe. "The touchstone of a ripeness inquiry is whether the harm asserted has 'matured enough to warrant judicial intervention.'" Parrish v. Dayton, 761 F.3d 873, 875 (8th Cir. 2014) (citation omitted); see also Vogel v. Foth & Van Dyke Assocs., Inc., 266 F.3d 838, 840 (8th Cir. 2001) ("The ripeness doctrine 'seeks to prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" (citation omitted)); Johnson v. Missouri, 142 F.3d 1087, 1090 n.4 (8th Cir. 1998) ("Although we realize that standing and ripeness are technically different doctrines, they are closely related in that each focuses on 'whether the harm asserted has matured sufficiently to warrant judicial intervention.'" (citation omitted)). Appellants' current apprehension of a credible threat of prosecution impermissibly rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998) (citation omitted). Accordingly, I would find that their claim, notwithstanding the absence of an injury, is not yet ripe for adjudication.

statute.  Cf. Zanders, 573 F.3d at 594-95 (holding that plaintiffs had not suffered an objective chill when the statute did not proscribe plaintiffs' intended speech).  Unlike the statute in ALDF v. Reynolds that prohibited even accessing an agricultural facility through fraudulent means, see 297 F. Supp. 3d 901, 909 (S.D. Iowa 2018), nothing in § 16-118-113 prohibits Appellants' investigator from gaining employment, even by fraudulent means, at Appellees' facilities.  Nor do the provisions Appellants challenge prevent that investigator from investigating nonpublic areas in Appellees' facilities. It is only after the investigator sets up an "unattended camera or electronic surveillance device . . . to record images or data for an unlawful purpose" that Appellants would face liability under the statute.  See Ark. Code Ann. § 16-118-113(c)(3).  Furthermore, under subsections (c)(1) and (2), Appellants would not face liability until they use the information or effects "in a manner that damages the employer."  I do not attempt to draw the exact line that Appellants must approach to suffer an injury in fact, but at minimum their investigator must "knowingly gain access to a nonpublic area" of Appellees' facilities before Appellants can be said to have been chilled from engaging in the course of conduct proscribed by the statute and for any credible threat of prosecution to exist.

Nothing in Appellants' complaint otherwise convinces me that there currently exists a credible threat of prosecution.  While evidence of Appellants' past engagement in undercover investigations supports the "concreteness and specificity of the [Appellants'] claims" by substantiating their intentions to commit such an investigation, see Initiative & Referendum Inst. v. Walker, 450 F.3d 1082, 1089 (10th Cir. 2006) (en banc), it does not make their *current* risk of prosecution any more credible when they currently lack the ability to carry out their intentions due to circumstances out of their control.  Similarly, while DeAnn Vaught's connection to the legislation and the alleged "important public interest in understanding how Peco operates" may give credence to Appellants' intentions, these allegations do not speak to whether Appellants are in fact able to engage in their desired First Amendment activity.  And while Appellants allege that Appellees are "likely" engaged in

inhumane practices, these are not statements of fact upon which this Court can draw reasonable inferences, see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992) (noting that "each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof"), but rather hypotheticals upon which Article III standing cannot be based, see Zanders, 573 F.3d at 594 ("While general factual allegations of injury might suffice to establish standing in some instances, general allegations of *possible* or *potential* injury do not."). Further, as noted above, the statute does not prevent Appellants from conducting an investigation into Appellees' facilities (notwithstanding the use of an unattended camera to record). In my view, this Court should not accept Appellants' chain of speculation when Appellants could proceed with their plan (as allowable under the statute) and establish a credible threat of prosecution with more concreteness and particularity.

In short, I find that Appellants are not actually exercising self-censorship. At this time, their ability to engage in their desired speech is inhibited not by the statute, but instead by a chain of events yet to occur. Under these circumstances, I find that Appellants are "simply attempting to obtain an advisory opinion or to enlist the court in a general effort to purge the [Arkansas] statute books of unconstitutional legislation." United Food & Com. Workers Int'l Union v. IBP, Inc., 857 F.2d 422, 430 (8th Cir. 1988). Accordingly, I respectfully dissent, and I would affirm the district court's dismissal.

_____