# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1750

_____

People for the Ethical Treatment of Animals, Inc.

*Plaintiff*

Iowa Citizens for Community Improvement

*Plaintiff - Appellant*

v.

Kimberly Reynolds, in her official capacity as Governor of Iowa; Brenna Bird, in her official capacity as Attorney General of Iowa; Vanessa Strazdas, in her official capacity as Cass County Attorney; Jeannine Ritchie, in her official capacity as Dallas County Attorney; Nathan Repp, in his official capacity as Washington County Attorney

*Defendants - Appellees*

------------------------------

Iowa Pork Producers Association; Iowa Farm Bureau Federation

*Amici on Behalf of Appellee(s)*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: January 14, 2026
Filed: April 23, 2026

_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

Five animal-welfare groups sued several Iowa officials, alleging Iowa Code § 727.8A violates their members' First Amendment rights on its face and as applied. The district court initially decided the statute was facially unconstitutional and permanently enjoined enforcement. But we reversed and remanded because § 727.8A may be applied in at least some instances without violating the Constitution. *See Animal Legal Def. Fund v. Reynolds*, 89 F.4th 1071, 1082 (8th Cir. 2024). On remand, two groups pursued as-applied challenges, arguing the statute violates their members' First Amendment rights when applied to prevent them from recording on property that is otherwise open to the public when the owner asks them to leave but does not ask them to stop recording. The district court[1] dismissed these challenges, and one group, Iowa Citizens for Community Improvement (ICCI), appeals. Applying § 727.8A to proscribe ICCI's members' alleged conduct does not violate the First Amendment, so we affirm.

## I. Background

Iowa criminalized trespassing long ago. *See* Act effective Jan. 1, 1978, ch. 1245, § 1607, 1976 Iowa Acts 567. Its general trespass statute defines "trespass" to include "[e]ntering or remaining upon or in property . . . after being notified or requested to abstain from entering or to remove or vacate therefrom by the owner . . . ." Iowa Code § 716.7(2)(a)(2). "A person has been notified or requested to abstain from entering or remaining upon or in the property . . . if . . . [t]he person has been notified to abstain from entering or remaining upon or in property personally, either orally or in writing . . . ." *Id.* § 716.7(2)(a)(2)(a). When an ordinary trespass does not result in bodily injury or property damage exceeding $300, the offense is a

_____

[1]The Honorable Stephanie M. Rose, Chief United States District Judge for the Southern District of Iowa.

-2-

"simple misdemeanor" and is punished by a fine between $105 and $855 and up to 30 days of imprisonment. *See id.* §§ 716.8(1)–(2), 903.1(1)(a).

In 2021, Iowa decided its general trespass statute was not deterring trespassers from unlawfully entering private property to record their trespasses. *See* 2021 Iowa Acts, ch. 83, § 2. So it enacted § 727.8A to create a new "trespass-surveillance" offense, which it treated more harshly than ordinary trespass. For instance, under § 727.8A,

> [a] person committing a trespass as defined in section 716.7 who knowingly places or uses a camera or electronic device that transmits or records images or data while the device is on the trespassed property commits an aggravated misdemeanor for a first offense and a class "D" felony for a second or subsequent offense.

Iowa punishes aggravated misdemeanors with a fine between $855 and $8,540 and up to two years of imprisonment, § 903.1(2), and class D felonies with a fine between $1,025 and $10,245 and up to five years of imprisonment. *Id.* § 902.9(1)(d).

As noted above, when § 727.8A took effect, five animal-welfare groups initiated this litigation against several Iowa officials responsible for enforcing the statute, alleging it violates the First Amendment, on its face and as applied, because it chills their members' speech. The district court initially decided the statute was facially unconstitutional, but we reversed and remanded. In our earlier decision, we rejected the officials' arguments that the groups lacked standing and that their claims were unripe. We agreed, however, that the statute is not unconstitutional on its face because it can be applied in some contexts without violating the First Amendment.

Two of the animal-welfare groups, including ICCI, developed as-applied challenges on remand, contending the statute's prohibition against using cameras while trespassing chills their members' speech when applied to prevent them from recording on private property that is otherwise open to the public after being asked

to leave but not to stop recording.[2]   Relevant here, ICCI alleges its members intentionally record themselves committing ordinary trespasses, "particularly . . . at political and corporate sites," to draw attention to their activities.  ICCI alleges its members are willing to suffer the consequences for ordinary trespass but the heightened penalties for trespass-surveillance have chilled their speech.

The officials moved to dismiss the as-applied challenges pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), recycling their arguments for why the groups' claims are not justiciable and arguing § 727.8A can be applied to their members' activity without running afoul of the First Amendment.  ICCI cross moved for summary judgment.  Relying heavily on our earlier decision, the district court concluded the groups' as-applied challenges are justiciable and fail on their merits because § 727.8A can be applied to their members without violating the Constitution.  Consequently, it granted the officials' motion and denied ICCI's.  ICCI appeals.

## II.  Analysis

The parties raise three issues on appeal: (1) whether ICCI has standing to pursue its as-applied challenge; (2) whether this challenge is ripe; and (3) whether applying § 727.8A to ICCI's members' conduct violates the First Amendment.  We review these issues de novo and address each in turn.  *See Missouri v. Yellen*, 39 F.4th 1063, 1067 (8th Cir. 2022) (standing and ripeness); *Josephine Havlak Photographer, Inc. v. Vill. of Twin Oaks*, 864 F.3d 905, 913 (8th Cir. 2017) (constitutional claims).

---

[2]Although § 727.8A prevents using a recording device while trespassing and placing such a device on private property, we previously decided none of the groups had standing to challenge the latter prohibition.  *See Reynolds*, 89 F.4th at 1079.  The groups' as-applied challenges, thus, only targeted the statute's use provision.

## A. Standing

The officials contend ICCI does not have standing. We disagree.

"Our authority under the Constitution is limited to resolving 'Cases' or 'Controversies.'" *DOE v. Brown*, 600 U.S. 551, 561 (2023) (quoting U.S. Const. art. III, § 2). The plaintiff must therefore demonstrate he suffered "(1) an injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) that a favorable decision will likely redress the injury" before we can adjudicate his claim. *Animal Legal Def. Fund v. Vaught*, 8 F.4th 714, 718 (8th Cir. 2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

To satisfy the first element, the plaintiff's alleged injury must ordinarily be "concrete, particularized, and imminent rather than 'conjectural or hypothetical.'" *Carney v. Adams*, 592 U.S. 53, 60 (2020). But "[w]hen the alleged injury is a chill on constitutionally protected speech, the First Amendment gives a more 'lenient standing requirement' to pre-enforcement challenges, such as this one." *Reynolds*, 89 F.4th at 1077 (quoting *Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 700 (8th Cir. 2021)). In this context, ICCI can satisfy the injury in fact element by alleging "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and . . . a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

The last time this case was before us, we decided the animal-welfare groups had standing to facially challenge § 728.8A's prohibition against recording while trespassing. *See Reynolds*, 89 F.4th at 1078. The officials contend we should reach the opposite result because ICCI is now pressing an as-applied challenge. They are mistaken.

We previously explained only one of the animal-welfare groups needed to demonstrate standing for us to adjudicate all the groups' claims. *Id.* ("In cases like this one — when a group of plaintiffs share[s] a consolidated complaint and hold[s] 'nearly identical' positions on an issue — only one plaintiff needs to satisfy Article III's case-or-controversy requirement . . . ." (quoting *Elder v. Gillespie*, 54 F.4th 1055, 1063 (8th Cir. 2022))). We then specifically analyzed ICCI's allegations, because it had "the strongest factual basis to establish standing." *Id.*

For instance, we noted ICCI alleged its "members travel to spaces generally open to the public," "disruptively protest in these spaces," "are inevitably asked to leave," and "intentionally record themselves trespassing" "[d]uring these encounters." *Id.* Based on these allegations, we concluded ICCI had standing to bring a facial challenge, reasoning it alleged an injury in fact, because its recordings were "arguably injected with a 'constitutional interest' due to its communicative and expressive purposes," and § 727.8A's "steep penalties chilled [its] speech." *Id.* (quoting *Driehaus*, 573 U.S. at 159). This chilling was "causally attributable to the . . . officials," since they were tasked with enforcing § 727.8A. *Id.* And we could relieve ICCI of a discrete injury, the enhanced penalties associated with trespass-surveillance, by enjoining the officials from enforcing the statute. *See id.* ICCI's as-applied challenge rests on these same allegations, so it has standing to pursue this challenge for the reasons we explained previously.[3]

## B. Ripeness

The officials contend ICCI's as-applied challenge is not ripe because it has "not matured enough to warrant judicial intervention" and ICCI's allegations are vague as to how it intends to violate § 727.8A. Neither argument has merit.

---

[3]The officials contend ICCI has not alleged a cognizable injury because it has no legitimate interest in recording while trespassing. This argument goes to the merits, rather than standing. *See Am. Farm Bureau Fed'n v. EPA*, 836 F.3d 963, 968 (8th Cir. 2016).

The case-or-controversy requirement demands that a plaintiff show his claims are ripe. *See Driehaus*, 573 U.S. at 157 n.5 ("The doctrines of standing and ripeness 'originate' from the same Article III limitation." (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006))). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (cleaned up). However, "when a party brings a pre-enforcement challenge to a statute that both provides for criminal penalties and abridges First Amendment rights, 'a credible threat of present or future prosecution *itself works an injury . . . .*'" *Minn. Citizens Concerned for Life v. FEC*, 113 F.3d 129, 131 (8th Cir. 1997) (emphasis added) (quoting *N.H. Right to Life Pol. Action Comm. v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996)). Thus, ICCI's as-applied challenge is ripe because it alleged § 727.8A's criminal penalties chill its members' speech, which is arguably protected by the First Amendment. *See Vaught*, 8 F.4th at 721 n.* (recognizing when "a plaintiff alleges a chill on speech, 'Article III standing and ripeness issues . . . boil down to the same question.'" (quoting *Driehaus*, 573 U.S. at 157 n.5)).

## C. Constitutionality

ICCI argues § 727.8A violates its members' First Amendment rights when applied to prevent them from recording on private property that is "otherwise open to the general public" after the owner asks them to leave but does not request that they stop recording. While novel, this contention is unsustainable.

"The First Amendment provides that the government 'shall make no law . . . abridging the freedom of speech . . . .'" *Phelps-Roper v. City of Manchester*, 697 F.3d 678, 686 (8th Cir. 2012) (quoting U.S. Const. amend. I). "As incorporated through the Fourteenth Amendment, the First Amendment's prohibition against abridging the freedom of speech applies to [§ 727.8A]." *Vill. of Twin Oaks*, 864 F.3d at 913 (cleaned up). As noted above, ICCI is pursuing an as-applied challenge, so we may only consider whether the statute can be applied to ICCI's members'

specific conduct without violating the Constitution. *See Minn. Majority v. Mansky*, 708 F.3d 1051, 1059 (8th Cir. 2013).

This analysis involves three steps. *See Green v. DOJ*, 54 F.4th 738, 745 (D.C. Cir. 2022). "First, we decide whether the activity at issue is speech protected by the First Amendment." *Id.* (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985) (cleaned up)). Second, we determine what level of scrutiny applies by deciding whether the statute is content based or content neutral. *See id.* "'Content-based laws — those that target speech based on its communicative content — are presumptively unconstitutional and may be justified only if' they satisfy strict scrutiny." *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 471 (2025) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). "Content-neutral laws, on the other hand, are subject to an intermediate level of scrutiny because in most cases they pose a less substantial risk of excising certain ideas or viewpoints from the public dialogue." *Id.* (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994) (cleaned up)). And third, we "apply the appropriate level of scrutiny." *Whitton v. City of Gladstone*, 54 F.3d 1400, 1403 (8th Cir. 1995).

Whether the First Amendment protects ICCI's members' speech in this context is an open question. We know "freedom of speech includes expression through the making and sharing of videos" in some instances. *Reynolds*, 89 F.4th at 1080 (citing *303 Creative LLC v. Elenis*, 600 U.S. 570, 587 (2023)); *see also Ness v. City of Bloomington*, 11 F.4th 914, 923 (8th Cir. 2021). But the Supreme Court "has never held that a trespasser . . . may exercise general rights of free speech on property privately owned and used nondiscriminatorily for private purposes . . . ." *Lloyd Corp. v. Tanner*, 407 U.S. 551, 568 (1972); *see also Hudgens v. NLRB*, 424 U.S. 507, 520–21 (1976) (holding picketers "did not have a First Amendment right to enter [a privately owned] shopping center for the purpose of advertising their strike"). We need not resolve this question because even assuming recording while trespassing implicates the First Amendment, ICCI's as-applied challenge fails.

In the previous appeal, we held § 727.8A is "reviewed under intermediate scrutiny because [it is] a content-neutral time, place, and manner restriction."[4] *Reynolds*, 89 F.4th at 1080. "To survive intermediate scrutiny, 'a regulation need not be the least speech-restrictive means of advancing the Government's interests.'" *TikTok Inc. v. Garland*, 604 U.S. 56, 76 (2025) (quoting *Turner Broad. Sys.*, 512 U.S. at 662). "Rather, the standard is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation and does not burden substantially more speech than is necessary to further that interest." *Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989) (cleaned up)).

Taking these components in turn, ICCI conceded § 727.8A serves a substantial state interest by not briefing this issue. *See Anderson v. Larson*, 327 F.3d 762, 771 (8th Cir. 2003) ("[A] party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue." (quoting *United States v. Eldeeb*, 20 F.3d 841, 843 (8th Cir. 1994))). This concession was appropriate, as we have repeatedly explained Iowa has an important government interest in protecting its citizens' property and privacy rights. *See Reynolds*, 89 F.4th at 1080; *Animal Legal Def. Fund v. Reynolds*, 8 F.4th 781, 786 (8th Cir. 2021) ("[D]iminution of privacy and a violation of the right to exclude [are] legally cognizable harms."). Section 727.8A promotes this interest. For example, in arguing that the statute chills its speech, ICCI admitted its members no longer record while trespassing because they are unwilling to risk the heightened penalties for trespass surveillance, and in arguing its injury is redressable, ICCI stated its members will resume their misconduct if we enjoin § 727.8A. Consequently, we conclude § 727.8A "promotes a substantial government interest that would be achieved less effectively absent the

---

[4]ICCI's argument that the district court failed to consider whether strict scrutiny applies is foreclosed by this holding. *See Thompson v. Comm'r of Internal Revenue*, 821 F.3d 1008, 1010–11 (8th Cir. 2016) ("[T]he law-of-the-case doctrine . . . 'prevents relitigation of a settled issue in a case and requires that courts follow decisions made in earlier proceedings . . . .'" (quoting *Klein v. Arkoma Prod. Co.*, 73 F.3d 779, 784 (8th Cir. 1996))).

regulation" and turn to tailoring. *TikTok*, 604 U.S. at 76 (quoting *Ward*, 491 U.S. at 799).

When we rejected ICCI's facial challenge, we held that § 727.8A is narrowly tailored. *Reynolds*, 89 F.4th at 1081–82. In reaching this conclusion, we reasoned that Iowa's interest in preventing trespass-surveillance is particularly strong because recordings can be disseminated widely and indefinitely, exacerbating the harm ordinary trespassers cause to property and privacy rights, and § 727.8A is narrowly "tailored to target th[is] harm and redress th[is] evil," as its "restrictions on the use of a camera only apply . . . when there has first been an unlawful trespass . . . . " *Id.* This reasoning is fatal to ICCI's as-applied challenge, given we have already determined § 727.8A may be applied to prevent recording during unlawful trespasses without violating the First Amendment in some instances, and ICCI now asks us to shield its members from the statute any time they record while trespassing, so long as they are not explicitly asked to stop recording.[5]

For instance, ICCI alleges its "members travel to spaces generally open to the public," "disruptively protest," "are inevitably asked to leave," and "intentionally record themselves trespassing" "during these encounters." *Id.* at 1078. ICCI's members then send "the video recordings to media outlets to increase their advocacy efforts [and] draw attention to their message." *Id*. ICCI posts this content on its website and social media "to communicate the message of the protests to ICCI's members and the public, and thereby encourage people to join the work." To give a few examples, ICCI alleges its "members have been arrested for trespassing in a number of settings: blocking a construction site, protesting in a bank lobby, and protesting in the offices of elected officials." *Id.* Based on ICCI's own allegations,

---

[5]Practically, any daylight between the facial challenge we already rejected and ICCI's present as-applied challenge is scant, as ICCI does not limit its argument to specific locations where it believes Iowa's interests in protecting property and privacy rights are less robust or to specific speech that it believes is important enough to outweigh these interests.

its members plainly want to engage in the exact misconduct § 727.8A is narrowly tailored to proscribe. Consequently, ICCI's as-applied challenge fails.[6]

ICCI makes three main arguments as for why § 727.8A is not narrowly tailored. They are meritless.

First, ICCI contends applying the statute does not further Iowa's interest in protecting property and privacy rights when a property owner objects to its members' presence but not to their recording. This is nonsensical. When a property owner uses his "power to exclude" by ejecting a trespasser — "one of the most treasured strands in [his] bundle of property rights" — he necessarily exercises his lesser right to stop the trespasser from unlawfully recording on his property. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982); *see also McClellan v. Chipman*, 164 U.S. 347, 360 (1896) ("[T]he power to do the greater necessarily carries with it the right to do the lesser.").

Second, ICCI suggests Iowa's interests in protecting property and privacy rights are not implicated when the locations at issue are otherwise open to the public. But property owners forfeit neither their right to exclude nor to control their property by opening it to the public for a certain purpose. *See Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 390 (1993) ("There is no question . . . the private owner of property[] may legally preserve the property under its control for

---

[6]ICCI suggests our prior decision in this case is at odds with decisions from the Fourth and Seventh Circuits because it holds § 727.8A can be applied without violating the First Amendment any time a trespass has occurred, regardless of whether the recordings actually damage the owner's property or privacy rights. *See PETA, Inc. v. N.C. Farm Bureau Fed'n, Inc.*, 60 F.4th 815 (4th Cir. 2023); *ACLU of Ill. v. Alvarez*, 679 F.3d 583 (7th Cir. 2012). Setting aside that we need not follow other circuits' decisions, *see Iverson v. United States*, 973 F.3d 843, 847 (8th Cir. 2020), we disagree. ICCI's as-applied challenge fails because its members' conduct actually causes the harms § 727.8A was narrowly tailored to prevent.

-11-

the use to which it is dedicated."); *Loretto*, 458 U.S. at 436 (noting property owners have the right to "control the use of the[ir] property").

Third, ICCI posits the officials failed to produce any evidence demonstrating Iowa needed to proscribe all the speech covered by the statute to achieve its interests. This argument lacks merit because § 727.8A is subject to intermediate rather than strict scrutiny, as discussed above. *Compare TikTok*, 604 U.S. at 76 (noting "a regulation need not be the least speech-restrictive means of advancing the Government's interests" to survive intermediate scrutiny (quoting *Turner Broad. Sys.*, 512 U.S. at 662)), *with Paxton*, 606 U.S. at 484 (stating a restriction needs to be "the least restrictive means of achieving a compelling governmental interest" to survive strict scrutiny).[7]

In sum, we conclude the officials can apply § 727.8A to proscribe the conduct ICCI contends its members engage in. Its members' recordings implicate Iowa's important state interest in protecting owner's property and privacy rights, these interests would be served less effectively without the statute, and the statute does not proscribe substantially more speech than necessary to achieve Iowa's legitimate ends. *See TikTok*, 604 U.S. at 76 (quoting *Ward*, 491 U.S. at 799).

### III. Conclusion

For these reasons, we affirm the district court's judgment dismissing ICCI's as-applied challenge.

_____

---

[7]As ICCI points out, under the Fourth Circuit's *PETA* decision, it is "a nonnegotiable requirement" of intermediate scrutiny that there be "'actual evidence' in the legislative record that lesser restrictions will not do." 60 F.4th at 831–32 (quoting *Reynolds v. Middleton*, 779 F.3d 222, 229 (4th Cir. 2015)). But we are not bound to follow *PETA* and will not do so because it is inconsistent with the intermediate scrutiny standard outlined in *TikTok* and *Turner Broadcasting Systems*.