# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 22-1826

———————————————

Richard Hershey

*Plaintiff - Appellee*

v.

Dr. John Jasinski, President of Northwest Missouri State University, in his official capacity

*Defendant - Appellant*

Dr. Jay Johnson, Interim Director of Northwest Missouri State University, Kansas City Campus, in his official capacity

*Defendant*

Dr. Pat Harr, Member of the Board of Regents of Northwest Missouri State University, in his official capacity; Dr. Marilou Joyner, Member of the Board of Regents of Northwest Missouri State University, in her official capacity; Jason Klindt, Member of the Board of Regents of Northwest Missouri State University, in his official capacity; John Moore, Member of the Board of Regents of Northwest Missouri State University, in his official capacity; Deborah Roach, Member of the Board of Regents of Northwest Missouri State University, in her official capacity; Richard Smith, Member of the Board of Regents of Northwest Missouri State University, in his official capacity; George Speckman, Member of the Board of Regents of Northwest Missouri State University, in his official capacity; Roxanna Swaney, Member of the Board of Regents of Northwest Missouri State University, in her official capacity; Melissa Evans, Member of the Board of Regents of Northwest Missouri State University, in her official capacity;

Lt. Anthony Williams, Police Officer for Northwest Missouri State University, in his individual and official capacity

*Defendants - Appellants*

_____

No. 22-1941

_____

Richard Hershey

*Plaintiff - Appellant*

v.

Dr. John Jasinski, President of Northwest Missouri State University, in his official capacity

*Defendant - Appellee*

Dr. Jay Johnson, Interim Director of Northwest Missouri State University, Kansas City Campus, in his official capacity

*Defendant*

Dr. Pat Harr, Member of the Board of Regents of Northwest Missouri State University, in his official capacity; Dr. Marilou Joyner, Member of the Board of Regents of Northwest Missouri State University, in her official capacity; Jason Klindt, Member of the Board of Regents of Northwest Missouri State University, in his official capacity; John Moore, Member of the Board of Regents of Northwest Missouri State University, in his official capacity; Deborah Roach, Member of the Board of Regents of Northwest Missouri State University, in her official capacity; Richard Smith, Member of the Board of Regents of Northwest Missouri State University, in his official capacity; George Speckman, Member of the Board of Regents of Northwest Missouri State University, in his official capacity; Roxanna Swaney, Member of the Board of Regents of Northwest Missouri State University, in her official capacity; Melissa Evans, Member of the Board of Regents of Northwest Missouri State University, in her official capacity;

Lt. Anthony Williams, Police Officer for Northwest Missouri State University, in his individual and official capacity

*Defendants - Appellees*

_____

No. 22-2236
_____

Richard Hershey

*Plaintiff - Appellee*

v.

Dr. John Jasinski, President of Northwest Missouri State University, in his official capacity

*Defendant - Appellant*

Dr. Jay Johnson, Interim Director of Northwest Missouri State University, Kansas City Campus, in his official capacity

*Defendant*

Dr. Pat Harr, Member of the Board of Regents of Northwest Missouri State University, in his official capacity; Dr. Marilou Joyner, Member of the Board of Regents of Northwest Missouri State University, in her official capacity; Jason Klindt, Member of the Board of Regents of Northwest Missouri State University, in his official capacity; John Moore, Member of the Board of Regents of Northwest Missouri State University, in his official capacity; Deborah Roach, Member of the Board of Regents of Northwest Missouri State University, in her official capacity; Richard Smith, Member of the Board of Regents of Northwest Missouri State University, in his official capacity; George Speckman, Member of the Board of Regents of Northwest Missouri State University, in his official capacity; Roxanna Swaney, Member of the Board of Regents of Northwest Missouri State University, in her official capacity; Melissa Evans, Member of the Board of Regents of Northwest Missouri State University, in her official capacity;

Lt. Anthony Williams, Police Officer for Northwest Missouri State University, in his individual and official capacity

*Defendants - Appellants*

_____

Appeals from United States District Court
for the Western District of Missouri - St. Joseph

_____

Submitted: February 14, 2023
Filed: November 21, 2023

_____

Before SMITH, Chief Judge, STRAS and KOBES, Circuit Judges.

_____

STRAS, Circuit Judge.

A familiar sight while strolling through a college campus is people handing out pamphlets, leaflets, and other materials. At Northwest Missouri State University, they must notify an administrator before distributing "non-University publications." The question for us is whether the college's advance-notice policy violates the First Amendment. We conclude that the answer is no, so we vacate the district court's judgment to the contrary and remand for the entry of judgment in the defendants' favor.

I.

Richard Hershey earns money promoting a vegan lifestyle on college campuses. In September 2015, he visited Northwest Missouri State with a stack of written materials. The only problem is that he did not review campus policies first.

Had he done so, he would have learned that the school has rules covering the distribution of literature on campus. The policy, located in the 2015-2016 Student Handbook, explained that:

> [d]istribution of non-University publications will be unrestricted on the Northwest campus if:
> . . .
> - The Vice President of Student Affairs or that person's designee is notified prior to the distribution of the materials.
> - Distribution is limited to areas deemed appropriate by the Vice President of Student Affairs or that person's designee. . . .
> - The publication may not contain anything that is defamatory, obscene, likely to inflict injury or tend to incite immediate violence (fighting words) or directed to inciting or producing imminent lawless action.

Hershey's visit began quietly until one student called campus police to report a "suspicious male" who was "attempting to pass something out to . . . students." The responding officer asked Hershey if he "ha[d] permission" to be there under "the policy of notifying Student Affairs." Although Hershey denied needing anyone's permission, the officer decided to "show [him] where" he could "ask."

The next stop was the Office of Student Affairs, but no one was available to see Hershey. The officer then gave him a choice: either "remain on campus without distributing leaflets or distribute leaflets off campus, but [he] could not do both." Hershey went with a third option: a trespass warning stating that "from this day forth you are no longer allowed to be in or upon the property of Northwest Missouri State University . . . . This notice will remain in effect until the Chief of University Police or his/her designee notifies you of a revocation in writing." Any violation would "subject [him] to arrest and prosecution" under state law. With his trespass warning in hand, Hershey left.

About a year later, Northwest Missouri State updated its policy. Although it resembles the policy in effect at the time of Hershey's visit, there is one notable

-5-

exception: it adds anything that is "illegal" or "violate[s] any other University policy" to the prohibited-publications list.

The story was still far from over. Nearly five years after he visited, Hershey sued multiple Northwest Missouri State officials under 42 U.S.C. § 1983 to declare the old and new policies unconstitutionally overbroad and to enjoin their enforcement. The district court, for its part, treated the two policies as materially indistinguishable from one another. The main problem, at least in the district court's eyes, was that neither required "a decision on the proposed speech within a reasonable period of time," which could have the effect of silencing speakers indefinitely. So it awarded Hershey most of the relief he requested:

1. The Trespass Warning Plaintiff received in September 2015 is declared null and void;
2. The Student Handbook Policy (and its successor, the Distribution of Non-University Publications Policy) are declared unconstitutionally overbroad; and
3. Defendants are required to amend these Policies to conform to First Amendment principles. They may do so by (1) enforcing the Policies as a permitting scheme, as they have done in the past, but ensuring that a University administrator is available to promptly review and grant or deny permission each time speech is challenged, or (2) enforcing the Policies as a true notice requirement, without requiring advance permission before speech occurs.

No one is happy with the outcome. The defendants oppose the injunction, and Hershey thinks it does not go far enough.[1]

---

[1]The defendants want us to strike Hershey's cross-appeal, which they suggest is just an effort "to sustain the same judgment on a different basis." *Spirtas Co. v. Nautilus Ins. Co.*, 715 F.3d 667, 671 (8th Cir. 2013). We disagree, mainly because he is trying "to enlarge [his] rights" beyond the relief already awarded. *Selective Way Ins. Co. v. CSC Gen. Contractors, Inc.*, 994 F.3d 952, 955 (8th Cir. 2021) (citation omitted).

## II.

Before addressing the injunction, we start with jurisdiction. On appeal, the defendants question Hershey's standing to bring a facial challenge against Northwest Missouri State's literature-distribution policy. If he has no standing, he cannot sue in federal court. *See Dakotans for Health v. Noem*, 52 F.4th 381, 385 (8th Cir. 2022) (reviewing de novo).

Standing has three requirements: (1) an injury in fact; (2) a causal connection between the injury and the challenged law; and (3) a likelihood of redressability. *See Telescope Media Grp. v. Lucero*, 936 F.3d 740, 749 (8th Cir. 2019); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (placing the burden on the party invoking federal jurisdiction). The nature of Hershey's claim requires us to address all three. *See Bernbeck v. Gale*, 829 F.3d 643, 646–47 (8th Cir. 2016).

The details of the literature-distribution policy dictate why: it has multiple subparts, and each can operate independently of others. There is an umbrella clause—"[d]istribution of non-University publications will be unrestricted . . . if"—followed by seven bullet points, each of which "is distinct and ends with a period." *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 344 (2005). The scope-of-subparts canon instructs us to treat them separately. *See id.* (applying it when "each [subpart] may be understood completely without reading any further"); *see also Fluor Corp. v. Zurich Am. Ins. Co.*, 65 F.4th 387, 389 (8th Cir. 2023) (using the canon).

Hershey challenges two of the seven bullet points. The first one is the requirement that "[t]he Vice President of Student Affairs or that person's designee [be] notified prior to the distribution of the materials." The second is the newer policy's ban on "publication[s]" that contain "anything that is . . . illegal" or "violate[s] any other University policy."

In situations like this one, when multiple requirements operate independently from one another, standing must exist "as to each challenged provision." *CAMP*

*Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1273 (11th Cir. 2006) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 233 (1990) (plurality opinion)). "[E]stablish[ing] harm under one provision" does not allow a plaintiff to challenge others. *Id.*; *see Davis v. FEC*, 554 U.S. 724, 733 (2008) (explaining that "[t]he fact that [the plaintiff] ha[d] standing to challenge [one provision of a statute] d[id] not necessarily mean that he also ha[d] standing to challenge" another).

A.

We start with the requirement of "notif[ying]" an administrator "prior to the distribution of" non-University publications. Hershey must show that application of this provision caused an "actual" injury that would be "redress[ed] by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted).

The first two standing elements do not pose a problem. After a Northwest Missouri State police officer ordered him to stop what he was doing when he visited, Hershey received a trespass warning that prevents him from returning in the future, even if he provides advance notice. Any attempt to do so would, according to the warning, result in his arrest. The harm Hershey has already suffered, along with the chilling effect associated with the "credible threat . . . of present or future [arrest]," are injuries-in-fact that are "fairly traceable" to the advance-notice requirement.[2] *Zanders v. Swanson*, 573 F.3d 591, 593, 595 n.3 (8th Cir. 2009); *see Susan B.*

---

[2]"Where the government voluntarily ceases its actions by enacting new legislation or repealing the challenged legislation, th[e] change will presumptively moot the case." *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 768 (6th Cir. 2019); *see Moore v. Thurston*, 928 F.3d 753, 757 (8th Cir. 2019). Here, however, the 2016 advance-notice provision "'is sufficiently similar to the [one in the 2015 policy] . . . that [we can] say that the challenged conduct continues.'" *Rosenstiel v. Rodriguez*, 101 F.3d 1544, 1549 (8th Cir. 1996) (quoting *Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 n.3 (1993)). Any prospective relief will necessarily target the 2016 version—the one still in effect—so it becomes our focus for the remainder of the opinion.

*Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) (stating that "the threat of future enforcement" is "substantial" when "there is a history of past enforcement").

Hershey's injuries are also redressable. The district court could—and actually did—remedy his continued exclusion from campus by declaring the trespass warning "null and void." *See Lujan*, 504 U.S. at 562 (explaining that, when an action causes the plaintiff's injury, "a judgment preventing . . . the action will redress it"). Not to mention that enjoining the advance-notice requirement altogether would give him the unconditional option to return to campus and distribute his materials. The point is that a "favorable decision" would "redress" most of his injuries. *Sisney v. Kaemingk*, 15 F.4th 1181, 1194 (8th Cir. 2021).

B.

The prohibited-speech provision is more complicated. There are two versions: the one in effect when Hershey visited in 2015 and the current one. The parties and the district court treat them as "virtually" the "same," but the addition of two new prohibited categories makes the one in effect today different from its predecessor. "[S]tanding is not dispensed in gross," so we must examine them one at a time. *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) (explaining that the "right to complain of one . . . deficiency" does not "automatically confer[] the right to complain of all . . . deficiencies").

The original version, which prohibited the distribution of material "contain[ing] anything . . . defamatory, obscene, likely to inflict injury or tend[ing] to incite immediate violence (fighting words) or directed to inciting or producing imminent lawless action," played no role in the denial of access during his visit or the issuance of the trespass warning. In causal terms, neither injury was "directly traceable" to application of the prohibited-speech provision. *California v. Texas*, 141 S. Ct. 2104, 2117 (2021).

-9-

Nor was any injury he suffered directly traceable to the new prohibited-speech provision, which was not even in effect until a year *after* he visited campus. A pre-enforcement challenge might have been possible, but he does not suggest that he "intend[s] to engage in a course of conduct" that includes distributing materials the new policy prohibits. *Susan B. Anthony List*, 573 U.S. at 159 (citation omitted). Without at least a "credible threat of enforcement" against him, Hershey has no standing to challenge the current version either.[3] *Telescope*, 936 F.3d at 750 (quoting *Susan B. Anthony List*, 573 U.S. at 159)).

III.

We now turn to the merits of the First Amendment challenge that Hershey can bring, which is against Northwest Missouri State's advance-notice requirement. Hershey's arguments against it are that it regulates speech based on its content and serves as an impermissible prior restraint on speech.

Yet rather than focus on how Northwest Missouri State officials applied the requirement to him, Hershey has decided to mount a facial challenge to prevent "all enforcement of" it. *Virginia v. Hicks*, 539 U.S. 113, 118 (2003). Succeeding on a facial overbreadth challenge like this one requires him to show that "a substantial number of [the policy's] applications are unconstitutional, judged in relation to [its]

_____

[3]There is a single sentence in Hershey's reply brief arguing that he can challenge the version in effect today on behalf of *others* whose speech it chills. We are skeptical, *see United States v. Hansen*, 599 U.S. 762, 769 (2023) ("[L]itigants typically lack standing to assert the constitutional rights of third parties."), but regardless, this argument comes too little, too late, *see Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 634 (8th Cir. 2007) ("[P]oints not meaningfully argued in an opening brief are waived."); *see also Am. Fam. Ins. v. City of Minneapolis*, 836 F.3d 918, 925 (8th Cir. 2016) (Murphy, J., concurring) ("Our duty to consider unargued *obstacles* to . . . jurisdiction does not affect our discretion to decline to consider waived arguments that might have *supported* such jurisdiction." (quoting *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1518 n.2 (10th Cir. 1996)).

plainly legitimate sweep." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008) (citation omitted); *cf. United States v. Stevens*, 559 U.S. 460, 472 (2010) (explaining that, outside this context, a facial attack requires a showing that "no set of circumstances exist[] under which [the statute] would be valid" (citation omitted)).

With facial challenges, "we do not look beyond the text," *Freedom Path, Inc. v. IRS*, 913 F.3d 503, 508 (5th Cir. 2019), meaning that Hershey's claim must rise or fall on what the advance-notice policy says, "not . . . its application to [his] particular circumstances." *Id.* (quoting *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006)). Our review is de novo. *See Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 798 (8th Cir. 2006).

## A.

The First Amendment, which applies to the states through the Fourteenth Amendment, prohibits laws "abridging the freedom of speech." U.S. Const. amend I. Universities are "not enclaves immune from [its] sweep." *Healy v. James*, 408 U.S. 169, 180 (1972). To the contrary, public institutions like Northwest Missouri State, *see* Mo. Rev. Stat. §§ 174.020, 174.283, which operate as an arm of the state, *see NCAA v. Tarkanian*, 488 U.S. 179, 183 (1988); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000), are often at the center of First Amendment controversies.

The location of the speech makes a difference. The general rule is that a speaker's level of access depends on the "character" of the government-owned property. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983). Speech is most open in traditional public forums, which have a "long tradition" of allowing "expressive activities." *Bowman v. White*, 444 F.3d 967, 975 (8th Cir. 2006) (first quoting *Perry*, 460 U.S. at 45; and then quoting *United States v. Grace*, 461 U.S. 171, 177 (1983)). They include "streets, sidewalks, and parks." *Id.* (quoting *Grace*, 461 U.S. at 177). Other locations, called limited public forums,

are "reserved . . . for certain groups or for the discussion of certain topics." *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 215 (2015) (brackets omitted) (quoting *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)). One example is a meeting room on campus open only to student organizations. *See Rosenberger*, 515 U.S. at 829–30. Finally, some government-owned property is not open to public speech at all. *See Perry*, 460 U.S. at 46–47 (describing nonpublic forums).

Unsurprisingly, Northwest Missouri State's campus "contains a variety of fora." *Bowman*, 444 F.3d at 976. The advance-notice requirement applies everywhere "on the Northwest campus," from public sidewalks to classrooms and faculty offices. Given that the First Amendment allows greater restrictions on public speech the less an area resembles a traditional public forum, Hershey arguably loses his facial challenge because the plainly legitimate sweep of the policy predominates over the potentially unconstitutional applications. *See Wash. State Grange*, 552 U.S. at 449. There is, for example, little question that Northwest Missouri State could require advance notice if Hershey wanted to hand out literature in a limited public forum like a classroom or a nonpublic forum like a faculty office.

The converse is also true. If Northwest Missouri State's advance-notice requirement is consistent with the First Amendment in a traditional public forum like a sidewalk, then it follows that the school can constitutionally apply it in areas less receptive to public speech, like classrooms and faculty offices. The point is that, if Hershey cannot establish that it is unconstitutional in the context of a campus sidewalk, which Missouri law designates as a public forum, *see* Mo. Rev. Stat. § 173.1550.2, then it will be impossible for Hershey to show that it violates the First Amendment at all, much less in "a substantial number" of applications, *Wash. State Grange*, 552 U.S. at 449 n.6 (citation omitted). He will, in other words, lose his facial challenge.

B.

In a traditional public forum, the level of scrutiny depends on how a regulation operates. If it "target[s] speech based on its communicative content"—a so-called content-based regulation—it must pass strict scrutiny. *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). Only "regulation[s] [that] serve a compelling state interest and [are] narrowly drawn to achieve that end" will survive. *Perry*, 460 U.S. at 45.

Other regulations apply without regard to the "communicative content" of the speech. *City of Austin*, 596 U.S. at 69. In traditional public forums, the government can "enforce . . . time, place, and manner" restrictions if they are content neutral, "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry*, 460 U.S. at 45. This test, a form of intermediate scrutiny, does not require the government to use the "least restrictive or least intrusive means" of regulation. *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989); *see id.* at 800 (explaining that "the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative").

The advance-notice requirement is content neutral. It requires *all* speakers to "notif[y]" an administrator before distributing *any* non-University publications on campus. As the district court explained, this blanket policy furthers Northwest Missouri State's "interest in maintaining order . . . and preventing disruptive or destructive conduct." *See Ross v. Early*, 746 F.3d 546, 555 (4th Cir. 2014) (holding that similar interests were substantial). Hershey does not argue otherwise. Nor does he dispute that his visit might have gone differently if he had informed an administrator in advance. The point is that the requirement imposes only a slight burden on speakers—a narrowly tailored one that serves important government interests. *See Josephine Havlak Photographer, Inc. v. Village of Twin Oaks*, 864 F.3d 905, 915 (8th Cir. 2017) (upholding a regulation because it "promote[d] a

-13-

substantial government interest that would be achieved less effectively absent the regulation" (quoting *Ward*, 491 U.S. at 799)).

It is true, as Hershey argues, that only individuals who wish to distribute "non-University publications" must provide advance notice. But there is a difference between a content-based restriction, which focuses on *what* a publication says, and one that turns on *where* it was printed. *See Bloedorn v. Grube*, 631 F.3d 1218, 1236 (11th Cir. 2011) (deeming a university's speech policy content neutral because "[a]ll outside, non-sponsored speakers must comply in the same way with the policy" regardless of "who the speaker may be or . . . the nature of the topic" addressed). It is the "what" that matters in distinguishing content-based restrictions from content-neutral ones. And here, individuals must provide advance notice regardless of "topic or subject matter."[4] *City of Austin*, 596 U.S. at 71.

## C.

Hershey's other argument is less about content and more about timing. He views the advance-notice requirement as a form of censorship, a so-called prior restraint on speech. *See Thomas v. Chi. Park Dist.*, 534 U.S. 316, 321 (2002) (describing prior restraints); *Alexander v. United States*, 509 U.S. 544, 550 (1993) (same); *see also* 4 William Blackstone, Commentaries *151 (distinguishing between "*previous* restraints upon publications" and "censure for criminal matter when published"). Prior restraints come "bearing a heavy presumption against [their] constitutional validity." *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975) (citation omitted).

---

[4]It also would not matter if, as the district court thought, administrators could "deny permission to some speakers who wish to engage in protected activity on campus." Discretion does not destroy content neutrality, unless "the topic discussed[,] or the idea or message expressed" drives the decision. *City of Austin*, 596 U.S. at 69 (quoting *Reed*, 576 U.S. at 163)).

-14-

To overcome the presumption, the Supreme Court has laid out a series of procedural requirements. *Id.* at 559. Among others, there must be "judicial superintendence" and "an almost immediate judicial determination of the validity of the restraint." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963); *see Freedman v. Maryland*, 380 U.S. 51, 58–59 (1965) (laying out three specific requirements). In Hershey's view, Northwest Missouri State's advance-notice requirement is facially unconstitutional because *no* safeguards are present.

They do not have to be, however, because the policy does not impose a prior restraint. It says that "[t]he distribution of non-University publications will be unrestricted on the Northwest campus if . . . [t]he Vice President of Student Affairs, or designee, *is notified* prior to the distribution of the publication materials." (Emphasis added). The policy makes clear what speakers must do: "notif[y]" an administrator in advance. *See The American Heritage Dictionary of the English Language* 1206 (5th ed. 2016) (defining "notify" as "[t]o give notice to; inform"); *Webster's Third International Dictionary* 1545 (2002) (defining it as "to give notice of; make known"). That's it. It does not allow an administrator to deny permission, meaning it does not "make[] the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official" who can deny "a permit or license." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969) (citation omitted); *see Powe v. Miles*, 407 F.2d 73, 84 (2d Cir. 1968) (Friendly, J.).

There are other textual clues that "noti[ce]" is the only requirement. The policy does not require advance *submission* of publications, much less call for an administrator to approve them. Nor is there any mention of a permit or license, *see, e.g.*, *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 126 (1992) (discussing an ordinance that, among other things, explicitly "provide[d] for the issuance of permits for parades, assemblies, [and] demonstrations"), let alone instructions on how to get one, *see, e.g.*, *Douglas v. Brownell*, 88 F.3d 1511, 1514 & n.3 (8th Cir. 1996) (explaining the information that a parade-permit application required under a city ordinance). The only obligation, in other words, is "that notice be given [in

-15-

advance], not that approval be obtained." *Powe*, 407 F.2d at 84; *see also FW/PBS, Inc.*, 493 U.S. at 226 (explaining that one of the evils of a prior restraint is the opportunity for censorship).

It is true that, by stating that distribution "will be unrestricted" with advance notice, the policy arguably implies that it "will be" restricted without it. But there is still no prior restraint unless a speaker must also get advance "*permission* from a government official." *Citizens United v. Schneiderman*, 882 F.3d 374, 387 (2d Cir. 2018); *see id.* at 386–87 (describing "the two traditional types of prior restraint" as "*preventing* the printed publication of disfavored information" and "set[ting] up an administrative apparatus with the power and discretion to weed out disfavored expression *before* it occurs" (emphases added)). And here, none is required.

Every textual clue in Northwest Missouri State's policy points to a "constitutional . . . reading" of its advance-notice requirement. *Spradlin v. City of Fulton*, 924 S.W.2d 259, 263 (Mo. banc 1996); *see Sisney*, 15 F.4th at 1198 (explaining that we interpret state statutes in accordance with state interpretive principles). But even if a prior-restraint reading were "equally possible," *Spradlin*, 924 S.W.2d at 263, the constitutional-avoidance canon would still require us to treat it as a time, place, and manner restriction—the less constitutionally problematic of the two possibilities. *See United States v. Hansen*, 599 U.S. 762, 781 (2023) (applying the constitutional-avoidance canon in a similar way).

Hershey's final argument is a reminder of what is not before us. He urges us to treat the advance-notice requirement as a prior restraint, despite its clear language to the contrary, because a campus police officer told him he needed *permission* from an administrator before he could distribute anything. If this were an as-applied challenge, Hershey might have a point. *See Gerlich v. Leath*, 861 F.3d 697, 704–07 (8th Cir. 2017) (holding that a policy was unconstitutional as applied, in part because officials required the plaintiffs to get approval). But in a facial challenge, only the text matters, *see Wash. State Grange*, 552 U.S. at 449–50, meaning that what the officer thought or said at the time is irrelevant. *See Porter v. City of Philadelphia*,

-16-

975 F.3d 374, 391 (3d Cir. 2020) (explaining that any discussion of how an official implemented or applied a policy does not matter for a facial challenge).

*       *       *

The procedural safeguards that must accompany prior restraints do not apply to content-neutral time, place, and manner restrictions. *See H.D.V.-Greektown, LLC v. City of Detroit*, 568 F.3d 609, 621 (6th Cir. 2009). Indeed, the Supreme Court "[h]as never required . . . a content-*neutral* permit scheme regulating speech in a public forum" to have them, *Thomas*, 534 U.S. at 322 (emphasis added), much less one with no permit requirement at all, *see Boardley v. U.S. Dep't of Interior*, 615 F.3d 508, 518 (D.C. Cir. 2010) (describing *Freedman* as "appl[ying] only to content-based censorship regimes" (citation omitted)); *see also Thomas*, 534 U.S. at 322 (recognizing *Freedman* as "inapposite" when an ordinance was "not subject-matter censorship but [a] content-neutral time, place, and manner regulation of the use of a public forum").

No matter the First Amendment theory, Hershey has not shown that the advance-notice requirement has "a substantial number" of unconstitutional applications. *Wash. State Grange*, 552 U.S. at 449 n.6 (citation omitted). It is neither content based nor an impermissible prior restraint on speech, meaning it can remain in place.[5]

IV.

One last loose end. The district court awarded Hershey $68,572.48 in attorney fees and costs, which was most of what he requested. Under 42 U.S.C. § 1988, "a

---

[5]Hershey also believes the policy is "unconstitutionally vague" because it lacks clarity and detail. The district court declined to consider this point because his pleadings never mentioned it. We do too. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 603 (8th Cir. 2009) ("[O]rdinarily, we do not decide issues that the district court did not adjudicate." (Citation omitted)).

district court may award [both] to a prevailing party in a lawsuit brought to enforce a provision of § 1983." *Williams v. City of Carl Junction*, 523 F.3d 841, 843 (8th Cir. 2008). Now, however, Hershey is no longer a "prevailing party," so he cannot receive either. *See Clark v. Kan. City Mo. Sch. Dist.*, 375 F.3d 698, 703 (8th Cir. 2004) (reaching the same conclusion when the party awarded attorney fees was "no longer the prevailing party" after we reversed the district court's judgment).

V.

We accordingly vacate the judgment of the district court and remand for the entry of judgment in the defendants' favor.

_____