# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-3464

_____

Animal Legal Defense Fund;
People for the Ethical Treatment of Animals, Inc.; Bailing Out Benji;
Food & Water Watch; Iowa Citizens for Community Improvement

*Plaintiffs - Appellees*

v.

Kimberly Reynolds, in her official capacity as Governor of Iowa;
Brenna Bird, in her official capacity as Attorney General of Iowa;
Vanessa Strazdas, in her official capacity as Cass County Attorney;
Jeannine Ritchie, in her official capacity as Dallas County Attorney;
Nathan Repp, in his official capacity as Washington County Attorney

*Defendants - Appellants*

------------------------------

Iowa Pork Producers Association

*Amicus on Behalf of Appellants*

Reporters Committee for Freedom of the Press; 17 Media Organizations; Deans,
Law Professors, and Journalism Professors; United Farm Workers of America

*Amici on Behalf of Appellees*

_____

Appeal from United States District Court
for the Southern District of Iowa

_____

Submitted: September 20, 2023
Filed: January 8, 2024
_____

Before COLLOTON, GRASZ, and KOBES, Circuit Judges.
_____

GRASZ, Circuit Judge.

Iowa enacted a trespass-surveillance law penalizing anyone who, while trespassing, "knowingly places or uses a camera or electronic surveillance device that transmits or records images or data while the device is on the trespassed property[.]" Iowa Code § 727.8A ("the Act"). Five animal-welfare groups (collectively, "Plaintiffs") sued Iowa state officials, arguing that the Act unconstitutionally punishes activity protected by the First Amendment. The Iowa officials (collectively, "the State") moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(1) and (6). The district court held that Plaintiffs had standing and the case was ripe, and concluded the Act was unconstitutional on its face because it was not narrowly tailored to achieve the State's substantial interests. The State appeals the district court's denial of the motion to dismiss, its grant of summary judgment to Plaintiffs, and its order permanently enjoining and prohibiting the enforcement of the Act. For the reasons discussed below, we affirm in part the district court's denial of the State's motion to dismiss, and we reverse the district court's grant of summary judgment to Plaintiffs.

## I. Background

In 2021, Iowa enacted Iowa Code § 727.8A, which created the new crime of trespass-surveillance. The Act states:

> A person committing a trespass as defined in section 716.7 who knowingly places or uses a camera or electronic surveillance device that transmits or records images or data while the device is on the trespassed

-2-

property commits an aggravated misdemeanor for a first offense and a class "D" felony for a second or subsequent offense.

The Act applies only when there has first been a "trespass" as defined in Iowa Code § 716.7(2). When a general trespass does not involve injury to a person or property damage over $300, Iowa punishes the offense as a "simple misdemeanor," *see id.* § 716.8(1), (2), with a fine between $105 and $855 and up to thirty days of imprisonment. *See id.* § 903.1(1)(a). The Act, however, punishes a first offense of trespass-surveillance as an "aggravated misdemeanor," with a fine between $855 and $8,540 and up to two years of imprisonment. *See id.* § 903.1(2). The State argues these steeper penalties are, in part, meant to deter would-be trespassers from placing or using recording devices, in addition to protecting the privacy interests of Iowans on their private property. Plaintiffs argue these steeper penalties chill their protected activity.

"Plaintiffs are five non-profit organizations dedicated to animal welfare, environmental protection, and other grassroots advocacy issues." *Animal Legal Def. Fund v. Reynolds*, 630 F. Supp. 3d 1105, 1109 (S.D. Iowa 2022). They are the Animal Legal Defense Fund (ALDF); People for the Ethical Treatment of Animals, Inc. (PETA); Bailing Out Benji (BOB); Food & Water Watch (FWW); and Iowa Citizens for Community Improvement (ICCI). ALDF and PETA send undercover operatives to targeted agricultural facilities. These self-styled investigators get jobs at the facilities and then use cameras to record activities,[1] looking for any violations of animal-cruelty statutes or other laws and regulations. ALDF and PETA send those video recordings to law enforcement and media outlets. BOB sends undercover operatives to secretly record suspected animal cruelty toward dogs inside breeding facilities and pet stores. BOB also sends its recordings to law enforcement and media outlets. ALDF, PETA, and BOB claim their operatives do not commit general trespass. FWW does not itself conduct any investigations, protests,

---

[1] We use "camera" as a catch-all term for any device the Act covers, which includes any "camera or electronic surveillance device that transmits or records images or data[.]" Iowa Code § 727.8A.

-3-

recording activities, or trespasses. Instead, FWW uses recordings obtained by the other plaintiffs for its own advocacy efforts. FWW claims it loses out on recordings from the other groups, which FWW says suppresses its own speech. ALDF, PETA, and BOB also claim to have standing as would-be recipients of speech.

Unlike the other plaintiffs, ICCI pleads its members *intentionally* commit general trespass, and they record themselves while doing so. ICCI engages in what it calls, "non-violent civil disobedience, particularly trespassing at political and corporate sites[.]" ICCI members record their protests to share with the public to draw attention to their activities and to record wrongdoing, particularly by law enforcement officers who arrest ICCI members.

The State moved to dismiss Plaintiffs' claims, and Plaintiffs moved for summary judgment. The district court held for Plaintiffs on both motions. Applying intermediate scrutiny to the Act, the district court held that the Act was facially invalid because it was not narrowly tailored to achieve a substantial state interest. The district court permanently enjoined enforcement of the Act. The State appeals both the denial of its motion to dismiss and the grant of summary judgment to Plaintiffs.

## II. Analysis

### A. Jurisdiction

Before addressing the merits, we must first analyze our jurisdiction. Unlike the district court, we do not think the State conceded the jurisdictional issue. The State argues that whatever injury Plaintiffs may suffer, it is not a *legally cognizable* injury capable of conferring Article III standing. We must make our own determination of whether we have jurisdiction over this case. "The existence of subject-matter jurisdiction," including whether a plaintiff has constitutional standing, "is a question of law that this court reviews de novo." *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011).

The State argues Plaintiffs have not pled an injury to a legally cognizable interest and, even if they had, the claims are neither redressable nor ripe because Plaintiffs have not pled a present chill on their speech. Thus, the key question is whether Plaintiffs pled facts showing they "have an objectively reasonable fear of legal action that chills their [protected] speech." *Animal Legal Def. Fund v. Vaught*, 8 F.4th 714, 720 (8th Cir. 2021) ("*Vaught*"). Answering that question requires us to first examine what particular activity the Act criminalizes. The Act punishes the trespasser who either "places or uses a camera or electronic surveillance device that transmits or records images or data while the device is on the trespassed property[.]" Iowa Code § 727.8A. An essential element of the Act is that it only applies to a person who has committed "a trespass as defined in [Iowa Code] section 716.7[.]" *Id.* By the Act's plain language, "place" and "use" are not synonymous; these terms relate to different types of activities. One can "use" a camera without ever "placing" the camera on the trespassed property, such as by holding the camera or attaching it to one's body.

The State asks us to sever the Act's two different provisions—"the Place Provision" and "the Use Provision"—and to analyze Plaintiffs' First Amendment interests under both. Iowa law encourages us to sever any offending portions of a statute from any non-offending portions, leaving the non-offending portions intact if they can be given effect without the offending portions. *See* Iowa Code § 4.12. *See also Am. Dog Owners Ass'n, Inc. v. City of Des Moines*, 469 N.W.2d 416, 418 (Iowa 1991) ("Severance is appropriate . . . if the remaining portion of the enactment can be given effect without the invalid provision."). "We should be sensitive to such expressions of legislative preference for severance." *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 800 (8th Cir. 2006). In this case, we decide to sever the statute in the standing analysis because "severance of particular statutory provisions to limit standing promotes important goals, notably the avoidance of unnecessary constitutional adjudication and the sharpening of legal issues facing the court." *Id.* at 801.

Because the Act's provisions are severable, Plaintiffs "must show injury, causation, and redressability with respect to each provision" they challenge. *Id.* *Accord Hershey v. Jasinski*, 86 F.4th 1224, 1229 (8th Cir. 2023). When we address Plaintiffs' standing, we must not "conflate Article III's requirement of injury in fact with whether a plaintiff has stated a cause of action because the concepts are not coextensive." *Pratt v. Helms*, 73 F.4th 592, 594 (8th Cir. 2023). *Accord Vaught*, 8 F.4th at 721.

### 1. Standing Under the Use Provision

First, we look to Plaintiffs' standing to challenge the Use Provision. "Our authority under the Constitution is limited to resolving 'Cases' or 'Controversies.'" *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023) (quoting U.S. Const. art. III, § 2, cl. 1). "Two related doctrines of justiciability—each originating in the case-or-controversy requirement of Article III—underlie this determination." *Trump v. New York*, 141 S. Ct. 530, 535 (2020). "First, a plaintiff must demonstrate standing, including 'an injury that is concrete, particularized, and imminent rather than conjectural or hypothetical.'" *Id.* (quoting *Carney v. Adams*, 592 U.S. 53, 60 (2020)). "Second, the case must be 'ripe'—not dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). Article III standing requires "(1) an injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) that a favorable decision will likely redress the injury." *Vaught*, 8 F.4th at 718 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "[P]laintiffs bear 'the burden of establishing these elements,' and must support each element 'in the same way as any other matter' on which they bear the burden of proof." *Id.* (quoting *Lujan*, 504 U.S. at 561).

The district court viewed the Rule 12(b)(1) motion as a facial attack on jurisdiction based on the pleadings, giving Plaintiffs the same procedural safeguards as a Rule 12(b)(6) motion. *Animal Legal Def. Fund*, 630 F. Supp. 3d at 1113–14. "The method in which the district court resolves a Rule 12(b)(1) motion . . . obliges

-6-

us to follow the same approach." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016). On a motion to dismiss, "[P]laintiffs must allege sufficient facts to support a reasonable inference that they can satisfy the elements of standing." *Vaught*, 8 F.4th at 718 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Plaintiffs satisfy the injury-in-fact element if they allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

When the alleged injury is a chill on constitutionally protected speech, the First Amendment gives a more "lenient standing requirement" to pre-enforcement challenges, such as this one. *See Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 700 (8th Cir. 2021). "[W]hen a party brings a pre-enforcement challenge to a statute that both provides for criminal penalties and abridges First Amendment rights, 'a credible threat of present or future prosecution itself works an injury that is sufficient to confer standing.'" *Minn. Citizens Concerned for Life v. FEC*, 113 F.3d 129, 131 (8th Cir. 1997) (quoting *N.H. Right to Life Pol. Action Comm. v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996)). In cases like this one—when a group of plaintiffs share a consolidated complaint and hold "nearly identical" positions on an issue—only one plaintiff needs to satisfy Article III's case-or-controversy requirement in its pleading. *Elder v. Gillespie*, 54 F.4th 1055, 1063 (8th Cir. 2022). The district court and the parties focus on ICCI as the plaintiff with the strongest factual basis to establish standing.

As pled, ICCI members travel to spaces generally open to the public or where the public is typically allowed. Apparently, as ICCI members disruptively protest in these spaces, they are inevitably asked to leave, and their refusal to leave makes them trespassers. ICCI members have been arrested for trespassing in a number of settings: blocking a construction site, protesting in a bank lobby, and protesting in the offices of elected officials. During these encounters, ICCI members intentionally

record themselves trespassing. They then send the video recordings to media outlets to increase their advocacy efforts, draw attention to their message, and reveal any violations of the law (other than their own). ICCI's recording in this context is arguably injected with a "constitutional interest" due to its communicative and expressive purposes. *Susan B. Anthony List*, 573 U.S. at 159. Because ICCI and its members have an arguable constitutional interest in recording themselves in this manner, the Use Provision's steep penalties chill their speech, which establishes an injury in fact. As pled, this injury is causally attributable to the State officials, meaning the first and second requirements for Constitutional standing are met.

Plaintiffs also meet the third requirement for Article III standing in that a favorable decision will likely redress Plaintiffs' injury. Redressability exists when a favorable decision will relieve the plaintiffs of a discrete injury, even if it does not relieve them of every injury, *Minn. Citizens Concerned for Life*, 113 F.3d at 131, or if the risk of injury "would be reduced to some extent if [the plaintiffs] received the relief they seek." *Massachusetts v. E.P.A.*, 549 U.S. 497, 526 (2007). ICCI claims that enjoining the State officials from enforcing the Use Provision would remove the "chilling" penalties. The State counters, claiming that application of *Advantage Media* to this case requires concluding ICCI's supposed injuries are not redressable.

*Advantage Media* involved a challenge to a city's sign ordinance, which prevented Advantage Media from displaying its signs as part of its commercial speech. 456 F.3d at 796–97. In holding that Advantage Media did not plead redressability, we noted other unchallenged city ordinances also prevented Advantage Media from displaying its signs. *Id.* at 801. Thus, even if the challenged provision were nullified, Advantage Media would not have received relief: its signs would have remained prohibited. *Id.* This case is different. Whereas Advantage Media could not get relief even if the challenged ordinance was invalidated, ICCI pleads it will get relief should the Act be enjoined. ICCI's members will go right back to committing their still-unlawful acts of civil disobedience but without the fear of the Act's steep penalties, though they may still be prosecuted for general trespass.

-8-

Thus, ICCI has pled facts showing its harm is redressable through judicial intervention, and it satisfies all three requirements of Article III standing.

Because ICCI's injury chills its speech, the ripeness requirement is also met. When "a plaintiff alleges a chill on speech, 'Article III standing and ripeness issues . . . boil down to the same question.'" *Vaught*, 8 F.4th at 721 n.* (ellipses in original) (quoting *Susan B. Anthony List*, 573 U.S. at 157 n.5). "For the same reasons that the plaintiffs have adequately alleged Article III standing, the case is ripe for purposes of Article III." *Id.* Having decided that ICCI has standing and that the case is ripe as pled, we need not address the standing of the other parties to challenge the Use Provision at the motion to dismiss stage. *See Elder*, 54 F.4th at 1063.

## 2. Standing Under the Place Provision

As to Plaintiffs' standing to challenge the Place Provision, we need not decide whether Plaintiffs have a First Amendment right to place cameras on trespassed property because Plaintiffs have not pled any facts suggesting they have historically placed cameras or plan to place cameras on trespassed property.[2] Plaintiffs only plead they *use* cameras, not that they *place* cameras. *See* Compl. ¶¶ 3, 19, 37, 55, 75, 76, 78. Plaintiffs cannot say the Place Provision chills them from engaging in

---

[2]Whether Plaintiffs have a constitutional right to place a camera on trespassed property is doubtful because the act of placing a camera is per se trespassory. Iowa law already prohibits the placing of "anything animate or inanimate" on the property of another without permission. *See* Iowa Code § 716.7(2)(a)(1), (4). *See also Nichols v. City of Evansdale*, 687 N.W.2d 562, 572 (Iowa 2004) ("As previously stated, 'fail[ing] to remove from the land a thing which [a person] is under a duty to remove' constitutes a trespass.") (alterations in original) (quoting Restatement (Second) of Torts § 158(c) (Am. L. Inst. 1965)). And the First Amendment does not give would-be trespassers a license to ignore trespass laws. *See Animal Legal Def. Fund v. Reynolds*, 8 F.4th 781, 785–86 (8th Cir. 2021). *See also Lloyd Corp., Ltd. v. Tanner*, 407 U.S. 551, 568 (1972) ("[T]his Court has never held that a trespasser . . . may exercise general rights of free speech on property privately owned and used nondiscriminatorily for private purposes only.").

their desired conduct because they have shown no desire to place cameras. Because the Place Provision does not injure Plaintiffs' speech, they lack Article III standing to challenge it.

## B. Facial Validity

Because Plaintiffs' challenge to the Use Provision is justiciable, we turn to the district court's facial invalidation of the Act. "We review de novo a district court's grant of summary judgment, viewing the facts in a light most favorable to the nonmovant." *Murguia v. Childers*, 81 F.4th 770, 774 (8th Cir. 2023). We apply Federal Rule of Civil Procedure 56, using the same summary judgment standard as the district court. *See id.*

For a facial challenge, Plaintiffs "would have to establish 'that no set of circumstances exists under which [the Act] would be valid,' . . . or 'that [the Act] lacks any plainly legitimate sweep.'" *Phelps-Roper v. City of Manchester*, 697 F.3d 678, 685 (8th Cir. 2012) (en banc) (cleaned up) (quoting *United States v. Stevens*, 559 U.S. 460, 472 (2010)). Plaintiffs also raise a second type of facial challenge, claiming that the Act is unconstitutionally overbroad. In the First Amendment context, a law is overbroad when "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Stevens*, 559 U.S. at 473 (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008)). "Because it destroys some good along with the bad, '[i]nvalidation for overbreadth is strong medicine that is not to be casually employed.'" *United States v. Hansen*, 599 U.S. 762, 770 (2023) (cleaned up) (quoting *United States v. Williams*, 553 U.S. 285, 293 (2008)).

When reviewing a facial challenge, we do not look beyond the text of the statute, nor do we examine how the Act applies to a plaintiff's particular circumstances. *Hershey*, 86 F.4th at 1231. Ultimately, Plaintiffs' facial challenge fails because the Act has a plainly legitimate sweep and it is narrowly tailored to achieve the State's significant government interests.

-10-

The First Amendment, which has been incorporated against the states, *Thornhill v. Alabama*, 310 U.S. 88, 95 (1940), generally prohibits laws "abridging the freedom of speech[,]" U.S. Const. amend I.  Because freedom of speech includes expression through the making and sharing of videos, *see 303 Creative LLC v. Elenis*, 600 U.S. 570, 587 (2023), we assume without deciding that the use of a camera while trespassing implicates the First Amendment as protected activity.  We must then review the statute by applying the appropriate level of scrutiny.  As the district court correctly assumed, Plaintiffs' facial challenge to the Act should be reviewed under intermediate scrutiny because the Act represents a content-neutral time, place, and manner restriction.  *See Peterson v. City of Florence*, 727 F.3d 839, 843 (8th Cir. 2013).

Because we assume the Act regulates a constitutional right, the Act must be narrowly tailored to serve the State's significant governmental interests, *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 76 (2022), and "it must not 'burden substantially more speech than is necessary to further the government's legitimate interests,'" *McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)).

The State cited its interests as protecting the privacy interests of individuals on their property, preventing the theft of trade secrets and proprietary information, and deterring trespassers from wrongfully alighting onto a property to make a recording.  Plaintiffs recognized that the State has a "significant" interest in protecting private property, and the district court recognized that "property rights and privacy are important governmental interest[s]."  Indeed, they are.  *See Animal Legal Def. Fund v. Reynolds*, 8 F.4th 781, 786 (8th Cir. 2021) ("[D]iminution of privacy and a violation of the right to exclude [are] legally cognizable harms.").  The only remaining question is whether the Act is narrowly tailored to serve the State's interests.

"Although a valid time, place, or manner regulation 'need not be the least restrictive or least intrusive' means of serving the government's interest, it may not

restrict 'substantially more speech than is necessary.'" *Phelps-Roper*, 697 F.3d at 693 (quoting *Ward*, 491 U.S. at 798–99). The district court held that the Act was not narrowly tailored because "there are other laws currently in effect which cover many of the instances where use of a video camera or electronic surveillance would raise issues relating to privacy concerns." *Animal Legal Def. Fund*, 630 F. Supp. 3d at 1120 (discussing Iowa's "peeping tom" and "invasion of privacy" laws). It reasoned "[t]he existence of these other laws beg[s] the question what the Act was intended to accomplish beyond targeting the express activities of organization[s] such as Plaintiffs." *Id.* In other words, because other narrower laws presumably advance the State's interests just as well, the district court reasoned that the Act—with its sweeping ban on all uses of a camera while trespassing—is not narrowly tailored to advance the State's interests.

Proper characterization of the State's interests is critical to the narrow-tailoring analysis because the framing of the purported substantial interests can be dispositive under our case law. A constrictive mischaracterization of the government's interests tends to unnecessarily invalidate a law. For example, in *Phelps-Roper v. City of Manchester*, our en banc court vacated a prior panel decision that had affirmed a district court's injunction of a city ordinance. 697 F.3d at 683. Members of the Westboro Baptist Church challenged an ordinance that "regulat[ed] the time and place of picketing at funerals and burials." *Id.* The ordinance established a 300-foot buffer zone between funeral-picketers and funeral-attendees "at the time of a funeral or burial service and for one hour before and after." *Id.* at 694. In upholding the ordinance under intermediate scrutiny, we overruled prior circuit decisions "which limited the government's interest in protecting unwilling listeners [only] to residential settings," *id.* at 692, concluding that the city also possessed significant interests "in protecting the peace and privacy of funeral attendees[.]" *Id.* at 693. After reconsidering the city's significant interests, we held that the ordinance was narrowly tailored and remanded the case for entry of judgment in favor of the city. *Id.* at 694–95. Similar to *Phelps-Roper*, we think the district court's analysis here did not fully account for the State's significant interests, which impacted its narrow-tailoring analysis.

Given the significance of the State's interests in stymieing surveillance-trespass, the Act does not restrict more speech than necessary to achieve its ends. The State seeks to protect property rights by penalizing that subset of trespassers who—by using a camera while trespassing—cause further injury to privacy and property rights. The State need not heighten the penalties for general trespass when its interest is in preventing trespass-surveillance specifically. *See Nat'l Press Photographers Ass'n v. McCraw*, 84 F.4th 632, 639, 655 (5th Cir. 2023) (holding that a Texas statute outlawing drone surveillance on private property was narrowly tailored because "the government's ability to accomplish its goal of protecting privacy rights would be 'achieved less effectively' absent the Surveillance provisions") (quoting *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 192–93 (5th Cir. 2000)).

Nor do other Iowa laws cited by the district court criminalize the same conduct the Act does. For instance, Iowa's "peeping tom" law prohibits filming without consent "another *person* through the *window* or any other *aperture* of a *dwelling* . . . if the person being viewed, photographed, or filmed has a *reasonable expectation of privacy*[.]" Iowa Code § 716.7(2)(a)(7) (emphasis added). The peeping tom law is limited in scope: it only protects persons in their homes from being recorded by someone outside the home and filming through a window. Likewise, the cited invasion of privacy law only prohibits a person from filming, without consent, "another person, for the purpose of arousing or gratifying the *sexual desire* of any person," if the person being filmed "has a reasonable expectation of privacy while in a state of full or partial nudity." *Id.* § 709.21(1)(c). That law is limited to instances when a voyeur tries to film a nude person to satisfy sexual desires. As the State points out, these two laws protect privacy and property rights in a limited set of circumstances.

As opposed to these two limited laws, the Act totally bans all uses of a camera on trespassed property. Though this means the Act sweeps more broadly than these other laws, that does not make it unconstitutional. "[T]he requirement of narrow

-13-

tailoring is satisfied 'so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Ward*, 491 U.S. at 799 (ellipses in original) (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)). The Act completely bans the use of a camera while trespassing, but even "[a] complete ban can be narrowly tailored . . . if each activity within the proscription's scope is an appropriately targeted evil." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988). Indeed, our court has upheld government restrictions on videotaping even when the public has a general right to access the venue or event to be recorded, *see Rice v. Kempker*, 374 F.3d 675, 678–79 (8th Cir. 2004), so it follows that the State's interests in preventing recording are even stronger when the public has no right to access the venue in the first place, *see Frisby*, 487 U.S. at 485 ("[I]ndividuals are not required to welcome unwanted speech into their own homes and . . . the government may protect this freedom.").

Without a doubt, trespassing is a legally cognizable injury because it harms the privacy and property interests of property owners and other lawfully-present persons. Trespassers exacerbate that harm when they use a camera while committing their crime. The Act is tailored to target that harm and redress that evil. Because the Act's restrictions on the use of a camera only apply to situations when there has first been an unlawful trespass, the Act does not burden substantially more speech than is necessary to further the State's legitimate interests. *See McCullen*, 573 U.S. at 486.

Whatever Plaintiffs' First Amendment interests may be, we cannot "go beyond [the Act's] facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Wash. State Grange*, 552 U.S. at 450. Because the Act has a plainly legitimate sweep, it survives intermediate scrutiny against Plaintiffs' facial challenge. And because the Act does not prohibit a substantial amount of protected speech relative to its plainly legitimate sweep, we hold that it is not unconstitutionally overbroad. *See Hansen*, 599 U.S. at 769–70.

### III. Conclusion

For the reasons above, we affirm in part and reverse in part the district court's denial of the State's motion to dismiss. Plaintiffs have standing to challenge the Use Provision, but not the Place Provision. We reverse the district court's summary judgment order, vacate its permanent injunction, and remand for further proceedings not inconsistent with this opinion.

_____